(December 28, 1905.)

## HUMBIRD LUMBER COMPANY v. THOMPSON.
[83 Pac. 941.]

DEMURRER WILL BE SUSTAINED TO A COMPLAINT IN EQUITY TO ENJOIN COUNTY ASSESSOR WHEN—FULL CASH VALUE OF PROPERTY MUST BE ALLEGED — AN ALLEGATION THAT OTHER PROPERTY IN THE COUNTY OF EQUAL VALUE HAS BEEN ASSESSED LOWER NOT SUFFICIENT.

1. A demurrer will be sustained to a complaint in equity to enjoin the assessor and tax collector from selling lands of complainant to satisfy taxes assessed where all the requirements of the statute have not been complied with.

2. A complaint to enjoin the assessor and tax collector from selling property to satisfy a tax levy regular in form must allege the full cash value of the property if the injunction is prayed for on the ground that the levy is excessive.

3. A complaint that only alleges the ''cash value,'' ''fair value'' or ''true value'' is not a compliance with section 10 of the revenue act (Sess. Laws 1901, p. 230).

4. An allegation that other property of similar character and value in the vicinity or county has been assessed at a less valuation than complainants is not sufficient to warrant a court of equity to grant relief.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County. Honorable R. T. Morgan, District Judge.

Action to restrain and enjoin the assessor and tax collector and the county from collecting the taxes assessed against appellant for the year 1903. Demurrer to complaint sustained, and judgment for costs awarded to respondents. Judgment affirmed.

The facts are stated in the opinion.

Charles L. Heitman, for Appellant.

It is clear that appellant had no adequate remedy at law. No appeal lies from the action of the board of county commissioners sitting as a board of equalization. (*Humbird*

*Lumber Co. v. Morgan,* 10 Idaho, 327, 77 Pac. 433.)   The county assessors are required to assess lands situated in their respective counties at their cash value.   (Laws 1899, p. 303.) The assessment in this case, according to the complaint, was made for more than the cash value of said lands, and the action of the assessor was unjustifiable, and appellant is entitled to relief.   (Idaho Const., art. 7, secs. 2, 5; *Orr v. State Board of Equalization,* 3 Idaho, 190, 28 Pac. 416; *County Commrs. v. Owen,* 7 Colo. 467, 4 Pac. 795.)   The Illinois state constitution prescribes that the "general assembly shall provide for levying a tax by valuation so that every person and corporation shall pay a tax in proportion to the value of his or her property."   This language is almost identical with that in section 5, article 7 of our state constitution.   The Illinois constitution also provides that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."   (*Trustees v. McConnell,* 12 Ill. 138; *O'Kane v. Treat,* 25 Ill. 458; *Hunsaker v. Wright,* 30 Ill. 146; *Dunham v. Chicago,* 55 Ill. 357; *Madison County Court v. People,* 58 Ill. 456; Cooley on Taxation, 164.)

Ezra Whitla, County Attorney, and C. W. Beale, for Respondent.

Section 35, page 248 of the Session Laws of 1901 contains a mandatory prohibition against the board of equalization from interfering in any manner whatever with the valuation placed upon property by the assessor, upon the failure of the taxpayer to furnish a sworn statement containing the value of his taxable property; the language being as follows: "And the value so fixed by the assessor must not be reduced by the board of commissioners."   (*Erwin v. Hubbard,* 4 Idaho, 170, 37 Pac. 274; *State v. Sadler,* 21 Nev. 13, 23 Pac. 799.   To the same effect see *Board of Commrs. v. Denver Union Water Co.,* 32 Colo. 382, 76 Pac. 1060.)   "It seems to be the well-settled rule that when the law has provided

boards of equalization, with power to adjust or correct assessments, parties being dissatisfied with the assessment of their property must apply to them, in the first instance, for relief, and that courts of equity will not interfere by injunction to restrain an irregular or illegal assessment until such relief has been sought and denied.'' (*First Nat. Bank of Missoula v. Bailey,* 15 Mont. 301, 39 Pac. 83; *Stanley v. Supervisrs of Albany,* 121 U. S. 535, 7 Sup. Ct. Rep. 1234, 30 L. ed. 1000; High on Injunctions, 3d ed., sec. 486, p. 370.) Mere irregularities in the valuation of property for taxation, or an excessive valuation, in the absence of fraud, will not warrant relief by injunction. (High on Injunctions, 3d ed., sec. 488, p. 372; *Woodman v. Ely,* 2 Fed. 839; *National Bank v. Kimball,* 103 U. S. 732, 26 L. ed. 469; *State Railroad Tax Cases,* 92 U. S. 575, 23 L. ed. 663; *Albuquerque Nat. Bank v. Perea,* 147 U. S. 87, 13 Sup. Ct. Rep. 194, 37 L. ed. 91.)

STOCKSLAGER, C. J.—This is an action to enjoin the respondent, Robert C. Thompson, as assessor and tax collector of Kootenai county, from selling the lands of appellant to pay the taxes of appellant for the year 1903. Plaintiff alleges that it is a corporation created under the laws of the state of Washington, and authorized to do business in the state of Idaho; that plaintiff is the owner of large tracts of land in Kootenai county; that in the year 1903, Robert C. Thompson, as assessor of Kootenai county, assessed to the plaintiff the lands described in exhibit ''A'' and fixed the assessment and valuation thereon as follows: The lands described in that part of exhibit ''A,'' entitled ''Pack River District,'' were assessed at $7 per acre, in ''Priest River District'' at $3 per acre, and in the ''Hoodoo Yellow Pine District'' at $2 per acre, and that they were extended on the assessment-roll of Kootenai county by said Thompson as such assessor. That said defendant Thompson, as such assessor, in assessing said lands, assessed said lands at much more than their cash value, and that said assessments as so made were and are far greater and higher

than the assessment by said Thompson of other lands in the same county of the same class, character and value, and are in excess of the fair value of said lands and are unequal as compared with the assessment of lands in the same locality and in other localities in the county of Kootenai of the same class, character and value, and are unequal and unjust, and that said assessments are not uniform as compared with the assessments of other lands; that the true value of the lands described in that part of exhibit "A" entitled "Pack River District," and which were assessed at $7 per acre, is and was $3.50 per acre; that the true value of the lands in the "Priest River District" is and was $3 per acre; that the true value of the lands in the "Hoodoo Yellow Pine District" is and was $2 per acre, except the lands described as "cut and burnt lands," the true value of which was and is $1 per acre.

It is then alleged that on or about the thirteenth day of July, 1903, said Humbird Lumber Company filed with the board of county commissioners for the county of Kootenai, sitting as a board of equalization, its application for a reduction of valuation of property, which application is annexed to this second amended complaint, marked exhibit "A"; that said application came on for hearing before said board of county commissioners on the thirteenth day of July, 1903, and witnesses were sworn and testified in support of said petition, and the hearing thereof was continued until the twentieth day of July, 1903, and on said day additional evidence, documentary and oral, was introduced in support of said petition, and the matter was taken under advisement by said board sitting as a board of equalization, until the twenty-seventh day of July, 1903; that on the twenty-seventh day of July, 1903, the said board sitting as a board of equalization made an order, entered upon the minutes of the court, granting a limited part of the relief sought by said Humbird Lumber Company in said proceedings. Copies of the minute entries and of the order made by said board are annexed to this amended complaint, marked exhibit "B."

The next allegation, being 8, sets out that being dissat-
isfied with the action of the board in refusing to grant the
reduction sought, it did on the second day of September, and
within twenty days after the first publication of the pro-
ceedings of the board, file, and cause to be served its notice
of appeal from said order of the board made on the twenty-
seventh day of July, 1903, and on the second day of Sep-
tember, filed its undertaking on appeal in the sum of $300.
That on the fifth day of October, 1903, Thomas H. Wilson,
county attorney in behalf of defendant, Kootenai county,
caused to be filed and served a notice to dismiss the appeal,
and thereafter, on same date, he filed a notice of motion to
dismiss the appeal; that thereafter and on the seventh day of
October, 1903, said motion to dismiss the appeal was heard
and taken under advisement. That on the twentieth day of
October, 1903, the motion was denied; that on the third day
of November, 1903, said appeal come on to be heard upon its
merits, at which hearing witnesses were sworn and examined
and documentary evidence introduced in behalf of said Hum-
bird Lumber Company, and after said Humbird Lumber Com-
pany had introduced its evidence in support of its claim, the
county of Kootenai and said members of the board of county
commissioners requested and obtained an extension of time
in which to introduce evidence in opposition to the claim of
said Humbird Lumber Company for a reduction of the as-
sessed valuation of its said lands; that the proceedings came
on for hearing before the honorable judge of said district
court on the twenty-ninth day of December, 1903, and defend-
ants introduced evidence, both documentary and oral, and the
matter was taken under advisement by said judge, and on the
second day of January, 1904, the said district judge notified
the attorney for the Humbird Lumber Company that the ap-
plication of said Humbird Lumber Company for a reduction
of the assessed valuation of the said lands would be granted
to the extent that the lands which had been assessed at $7
per acre would be reduced to $3.15 per acre, and that the
lands which had been assessed at $3 per acre would be re-
duced to $2 per acre, and that said judge, at the time he noti-

fied said attorney of his decision, requested said attorney to prepare the necessary judgment or order to be signed, which instructions were complied with. That said judge thereafter delayed signing any order or judgment or findings in the premises to carry out his said decision, although requested so to do by the attorney for said Humbird Lumber Company, as appears by a letter written by said judge to the attorney for plaintiff, a copy of which is marked exhibit "C," and attached to this complaint.

The ninth allegation is that on the fourth day of February the judge of said court, upon application of the attorneys for Kootenai county, allowed said defendant to file and serve another motion to dismiss said appeal, which motion was argued, taken under advisement, and on the eighteenth day of March, 1904, sustained and the appeal dismissed. That subsequent to the dismissal of said appeal, the supreme court of Idaho had decided in a similar case that the right of appeal does not lie from an order made by the board of county commissioners sitting as a board of equalization. Plaintiff further avers that the said appeal of the plaintiff herein is still pending and undetermined in the supreme court of Idaho.

The tenth allegation is that the total amount of taxes assessed against the Humbird Lumber Company upon its lands for the year 1903 amounted to $18,185.56; that the reduction according to the decision of the district judge upon the merits of plaintiff's appeal from the action of the board of equalization, so made on the second day of January, 1904, would have amounted to about the sum of $6,000, leaving the amount of $11,877.06 due from plaintiff to said Kootenai county as its taxes for 1903; that on the second day of January, 1904, plaintiff tendered to defendant Thompson, as such assessor and tax collector, the sum of $11,877.06, being the amount due said county for the year 1903, after the same had been reduced by the decision of said district judge, but that said Thompson, as such assessor and tax collector, declined and refused to accept said sum in payment of plaintiff's said taxes, and ever since has declined and refused, and still refuses, to accept the same in payment of said taxes.

The eleventh allegation is that as part of the total sum of
$18,185.56 assessed against the lands of the plaintiff in 1903,
about $1,440 was and is a special property road tax levied
by order of the county commissioners, and that plaintiff ap-
pealed from the levy so made to the district court in and
for the county of Kootenai, and that said appeal was heard
in said court about the twentieth day of October, 1903, and
thereafter, to wit, on or about the 19th of January, 1904, the
honorable judge of said district court rendered a judgment
against the plaintiff, and that plaintiff did, on or about the
twenty-fifth day of January, 1904, appeal from said judgment
to the supreme court, and that said appeal is still pending
and undetermined; that as plaintiff is advised and believes,
the statute authorizing said special property road tax is un-
constitutional, and therefore null and void.

The twelfth allegation alleges that it should not be held
liable for, and its lands should not be subjected to, the pay-
ment of the penalty of $18,185.56, which is claimed by de-
fendant Thompson as assessor and tax collector, and for the
payment of which in part the lands of plaintiff are adver-
tised to be sold, for the reason that the honorable judge of
the district court, in his letter of January 3, 1904, which is
made a part of this amended complaint, marked exhibit "C,"
notified the attorney for the plaintiff herein that the assessor
was aware of the decision in favor of plaintiff and reducing
the assessed valuation of its lands as hereinbefore set forth,
and that the taxes, so claimed to be due by said defendant as-
sessor and tax collector from plaintiff should not be placed
upon the delinquent list, and that no penalty should attach.

It is alleged in the thirteenth paragraph that said Thomp-
son, as assessor and tax collector, has advertised the lands of
plaintiff for sale in order to realize therefrom the sum of
$18,185.56, including said sum of about $1,440 so levied by
said board of county commissioners as a special road tax,
the amount assessed against plaintiff's lands for the year
1903, together with the sum of $18,185.56 as penalty claimed
by said Thompson, for the alleged delinquency by plaintiff
in payment of its said taxes, and the further sum of $81.75

for publication of said property of plaintiff in the list of delinquent property subject to taxation; and that unless restrained and enjoined by an order of this court, said defendant Thompson, as such assessor and tax collector, will sell said lands of plaintiff, and thereby cast a cloud upon the title of plaintiff to its said property, and thereby cause a great damage and injury to plaintiff.

The fourteenth allegation is that the plaintiff has no adequate remedy at law. Then follows a prayer that defendant Thompson, as assessor and tax collector, be restrained and enjoined by this court from selling the said lands of the plaintiff, or any part thereof, to pay and satisfy the said taxes so assessed against the lands of plaintiff. That the court take jurisdiction of the case and hear evidence upon the merits of the controversy and grant plaintiff such reduction upon the assessment so made upon its property by the assessor for the year 1903, as will be equal, uniform and just, and that plaintiff may have such other and further relief as to the court may seem just and equitable.

To the complaint is appended the application to the board of county commissioners for a reduction of valuation of property, and the exhibits referred to in the complaint. Exhibit "C" is as follows:

"Chas. L. Heitman, Rathdrum, Idaho.

"My Dear Sir: Mr. Wilson has requested that I await the receipt some findings which he desires to submit, and I will do so. The assessor is aware of the decision, and therefore cannot place these taxes upon the delinquent list. If necessary I will communicate with him in order that no penalty attach. I am informed that there is an additional five per cent increase in valuation made by the state board which is not covered by the decision in this case. Please confer with Wilson relative to this matter, also the lands described in Exhibit 'C.' I will be in Wallace to-morrow afternoon.

"Yours very truly,

"R. T. MORGAN."

To the complaint a demurrer was filed by defendant Thompson as assessor and tax collector of Kootenai county: 1. That said second amended complaint does not state facts sufficient to constitute a cause of action. 2. That there is a misjoinder of parties defendant in said second amended complaint in this, to wit, that said action is brought to enjoin the said defendant Thompson from selling certain property mentioned in said second amended complaint, and for the reduction of a certain assessment made upon said plaintiff's property by said Thompson for the year 1903, and with which and concerning which said defendant, the county of Kootenai, state of Idaho, a corporation, has nothing. to do whatever, either with said assessment or with the threatened sale, and that plaintiff fails absolutely to show any connection that the said defendant, the county of Kootenai, state of Idaho, a corporation, has with the acts or threatened acts or conduct of said defendant Thompson, or that it has done or threatened to do anything whatever to the injury or damage of said plaintiff, or is in any manner connected with the acts or conduct of the defendant Thompson complained of in said second amended complaint. 3. That said amended complaint is uncertain in this: a. That it does not appear therefrom what was the cash value or the full cash value of the lands mentioned in said second amended complaint at the time of the assessment of the same by said defendant Thompson, or at any time or at all. b. Nor does it appear therefrom how much greater or higher the assessment placed upon said lands by said Thompson was than the assessment placed by him upon other lands of the same class, character and value in said county of Kootenai, as the lands of the plaintiff assessed by said Thompson at a lower valuation than the lands of the plaintiff; or in what amount the assessment placed upon plaintiff's land was in excess of the fair value or full cash value of said lands; or in what measure or amount the assessment of said plaintiff's lands by said defendant Thompson was unequal as compared with assessments of land in the same locality or in other localities in the county of Kootenai of the same class, character and value, or was not uniform as com-

pared with assessments of other lands of the same kind, character and value situated in the same or other localities in the county of Kootenai. c. Nor does it appear therefrom that, after the reduction of the assessed valuation of said lands by the said board of equalization, the valuation thereof exceeded the actual cash value or the full cash value of the same, or was a valuation in excess of the assessed valuation made by said defendant Thompson upon other lands in the said county of Kootenai of the same class, character and value, or was in excess of the fair or full cash value of said lands, or was an unequal value compared with the assessments of lands in the same and in other localities in the county of Kootenai of the same class, character and value, or was an unequal or unjust valuation or not uniform, as compared with the assessed values of other lands of the same kind, character and value, situated in the same and in other localities in the said county of Kootenai. d. Nor does it appear therefrom when the said defendant Thompson threatens to or will sell said property unless restrained by the order of this court. e. Nor does it appear therefrom that said plaintiff ever furnished the said defendant Thompson with any statement under oath relative to the amount and value of its assessable property as required by the laws of the state of Idaho or otherwise. f. Nor does there it appear therefrom the amount of alleged tender mentioned therein, nor whether the same represents the amount which is justly and equitably due as taxes upon the said property of said plaintiff for the year 1903; nor whether said alleged tender was made conditionally or unconditionally. g. Nor does it appear therefrom what was the amount of the taxes levied and assessed against the said plaintiff upon its said lands for the year 1903. h. Nor does it appear therefrom what is meant by the expression, "true value of the lands," mentioned in paragraph 7 thereof. 4. That said amended complaint is ambiguous in this: a. That it does not appear therefrom how the relief granted by the board of equalization mentioned therein was but a limited relief, when, at the same time, exhibit "B" attached to said second amended complaint shows that the said board of equalization

reduced the valuation of forty-eight thousand seven hundred and fifty-one acres from $7 to $3 per acre, and the valuation of two thousand seven hundred and eighty-four acres from $7 to $1 per acre. b. Nor does it appear therefrom how the court, on plaintiff's pretended appeal from the order of the board of equalization, could or would reduce the valuation of lands from $7 to $3.15 per acre when the board of equalization had already reduced the valuation of said lands from $7 to $3 per acre.

This demurrer was argued, submitted to the court and sustained on the third day of May, 1905, and judgment of dismissal ordered. On the twenty-second day of May, 1905, judgment was entered against plaintiff in favor of defendant Thompson for his costs.

In order that the exact situation of this case may be understood, we have felt justified in including almost a *verbatim* copy of the complaint with the exception of exhibits "A" and "C," and the demurrer in the opinion. Counsel for appellant insists that this complaint is sufficient to entitle him to a hearing on the merits of his complaint. Under the provision of article 7, section 2 of the constitution it says: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his or her or its property." Again, article 7, section 5 of the constitution provides: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal." If the plaintiff has shown by its complaint that its property has been unfairly assessed by defendant, Thompson, as assessor of Kootenai county, in any manner whatever, or that it has been assessed in excess of its actual cash value, then it certainly has a remedy, and as this court has said in *Humbird Lumber Co. v. Morgan,* 10 Idaho, 327, 77 Pac. 433, there is no appeal from the action of the board of county commissioners sitting as a board of equalization, it perhaps

has sought a remedy to reach the evil of which it complains. Our entire revenue law is based on the theory that all property owners in the state shall pay equal, just and fair taxation. It may at times and under conditions be difficult for the county assessor as well as the board of equalization to reach all property for taxation on a just and equal basis, but as the law presumes that all officers faithfully discharge their duties under their oaths and bonds, this presumption must be overcome before their official acts will be disregarded and held for naught by the courts. It is not sufficient to allege an illegal or wrongful act on the part of some officer whom the people have trusted by his selection to discharge the duty of office, but facts must be stated, not uncertain or equivocal, as a reason for the allegation. We do not think there is any serious difficulty in arriving at a correct solution of the law in this case. Indeed, we do not understand that learned counsel who represents the respective parties to the litigation materially disagree on the legal questions involved. In 1891, about one year after the adoption of our constitution, which provides a very complete revenue system, in the case of *Orr v. State Board of Equalization,* 3 Idaho, 190, 28 Pac. 416, in speaking for the court, Mr. Justice Morgan said: "Every citizen and taxpayer of the state has a right to bring a proper suit to determine whether any board or officer having any authority connected with the levy and assessment of taxes has performed his duty as the law requires." Counsel for respondent very earnestly insists that the complaint is defective in that it does not comply with section 10, page 230 (Sess. Laws 1901), which provides: "All taxable property must be assessed at its full cash value; land and improvements thereon must be assessed separately"; he also calls attention to subdivision 5, section 3, page 235 (Sess. Laws 1901). This subdivision provides: "The term 'value' and 'full cash value' means the amount at which the property would be taken in payment of a just debt due from a solvent debtor." He then urges that such terms used in the complaint as "cash value," "true value," or "fair value" do not bring him within the

above provisions of the law. Again he insists that appellant in his complaint before us in any proceedings enumerated in said complaint neglects to advise the board of equalization, the lower court or this court as to what was the actual, full cash value of any of its said property. "Cash value," "fair value," "true value," means nothing for the purposes of taxation, and would be a complete defense against a prosecution for perjury upon the proposition as to the actual full cash value of appellant's land. So says counsel for respondent. Again he says the respondent may have assessed the premises of appellant at more than the "cash," "fair" or "true value" of its property as understood and interpreted by it and its counsel, but that the assessor assessed this property at more than its actual full cash value, or at a higher or greater valuation than the actual full cash value placed by him upon the property of the other taxpayers in the county of Kootenai, being property of the same class, character and value as appellant's. We have never been advised in any of the numerous proceedings involving the question of the collection of appellant's taxes.

An examination of the application for a reduction of valuation, after stating that it is a corporation and that it is the owner of the lands in exhibit "A," states in paragraph 3 that all of said lands, with the exception of the lands marked "burnt and cut" lands, have been assessed at $7 per acre; that said assessment is excessive, and furthermore, that "said assessment is not uniform with the assessed valuation placed upon other lands of equal value, situated in the same locality as the lands of the Humbird Lumber Company, as your applicant is prepared to show; . . . . that as your applicant is informed and believes said lands were in the year 1902 assessed for a valuation at from fifty cents to $3.75 per acre; that the assessed valuation in 1902 was a fair valuation, and that the said lands, and no part thereof, have increased in valuation since 1902 to such an extent as to justify the increased valuation which has been placed upon them by the assessment of 1903." This is the only reference to the value of the land referred to in the petition. It

is sworn to by A. E. Rickerd, state agent of appellant. Counsel for respondent contends that under this showing the board of equalization was without authority to act on the petition, under the provisions of section 35, page 248 (Sess. Laws 1901). This section is as follows: "If any person, after demand made by the assessor, neglects or refuses to give under oath the statement therein provided for, or to comply with the other requirements of this act, the assessor must note the refusal on the assessment-book opposite his name, and must make an estimate of the value of the property of such person, and the value so fixed by the assessor must not be reduced by the board of commissioners." It would seem that the whole theory of the revenue law is that the actual cash value of property is the basis for assessment, and this being true, if a taxpayer desires to attack the assessment for the reason that it is too high in proportion to other property in the same vicinity, or if for any reason he desires to question the assessment before the board of equalization, he must, under oath, state the full cash value of the property alleged to be erroneously assessed. A careful reading of the complaint, together with all the exhibits, fails to disclose at any time or place such a statement from appellant. The fact that the property of appellant was assessed at a less figure in 1902 than it is shown it was assessed in 1903 furnishes no estimate of its full cash value for 1903, and the statement of the agent of appellant who verifies the petition to the board of equalization for a reduction in the assessment, "that the assessed valuation in 1902 was a fair valuation," does not meet the requirements of the law. We are unable to find where this court has ever been called upon to pass upon the question before us.

In *Board of Commissioners of Arapahoe County v. Denver Union Water Co.*, 32 Colo. 382, 76 Pac. 1060, the second clause of the syllabus says: "Under Session Laws of 1889, page 24, providing that, where an owner of assessable property has been erroneously assessed thereon, he may petition the board of county commissioners for its correction, setting forth in his petition the description of the property, the time at which it is assessed, its true cash value, and what is a just assessment

thereof, compared with similar property. A petition failing
to allege the true cash value of the property, or what a just
assessment thereon would be, is insufficient to entitle the peti-
tioner to a hearing. In the opinion it is said the statute under
consideration is the source and measure of the power and
jurisdiction both of the board of commissioners and the dis-
trict court to offer relief to a complaining taxpayer. The
remedy thereby given is purely statutory, and exists only
because the statute gives it.'' We are in harmony with this
conclusion. It would seem unnecessary to cite authorities
other than our statute and the construction of courts on simi-
lar statutes. It will be observed that there is no averment
in the complaint that the assessment was fraudulent, pur-
posely oppressive or an intimation of any kind or character
that the assessor did not act in the utmost good faith in as-
sessing appellant's property. In *Wagoner v. Loomis,* 37
Ohio St. 571, the third clause of the syllabus says: ''In-
equalities in the valuations made under a valid law of prop-
erty for taxation do not constitute grounds for enjoining the
tax in the absence of fraudulent discriminations by the agents
and officers charged by the law with the duty of making such
valuations.'' In the opinion it is held that averments that
the assessments were unequal and partial are not sufficient.
This was an application for an injunction, and was denied.
In *Woodman v. Ely,* 2 Fed. 839, this significant language is
used: ''The bill alleges a fraudulently excessive levy and in-
equality in the valuations on the roll. Mere excessive valua-
tion does not justify an injunction or restraining the col-
lection of a tax, and there is an entire failure to prove fraud
on the part of the assessor.'' It is true this was an action
to enjoin the collection of a certain tax, but we can see no
reason why the same rule should not apply in an applica-
tion to the board of equalization for a reduction of the as-
sessment, or a complaint in the district court for injunctive
relief. In *National Bank v. Kimball,* 103 U. S. 732, 26 L.
ed. 469, it is said in the opinion: ''The allegations are pretty
full that the assessments are partial, unequal and unjust,
and do not result in the uniformity of taxation which the con-

stitution of Illinois requires. . . . . We think the circuit court did not err in dismissing such a bill.''

In the *Railroad Tax Cases*, 92 U. S. 575, 23 L. ed. 663, an opinion by Mr. Justice Miller, we find this language in the first syllabus: ''While this court does not lay down any absolute rule limiting the powers of a court of equity in restraining the collection of taxes, it declares that it is essential that every case be brought within some of the recognized rules of equitable jurisdiction, and that neither illegality or irregularity in the proceedings, nor error or excess in the valuation, nor the hardships or injustice of the law, provided it be constitutional, nor any grievance which can be remedied by a suit at law, either before or after the payment of the tax, will authorize an injunction against its collection.'' The second clause says: ''This rule is founded on the principle that the levy of taxes is a legislative and not a judicial function, and the court can neither make nor cause to be made, a new assessment, if the one complained of be erroneous, and also in the necessity that the taxes, without which the state could not exist, should be regularly and promptly paid into the treasury.'' Mr. Justice Brewer, speaking for the court in *Albuquerque Nat. Bank v. Perea,* 147 U. S. 87, 13 Sup. Ct. Rep. 194, 37 L. ed. 91, uses this strong and pertinent language: ''The decree discussing the original and supplemental bills must be sustained. As to the tax of 1888, the case stands upon the allegation that plaintiff's property was originally assessed at its full value, while other property was assessed seventy per cent thereof; that it appealed to the board of equalization for a reduction, and that such tribunal reduced the valuation, but only to eighty-five instead of seventy per cent. It would seem that the mere statement of this was sufficient. The law of New Mexico requires property to be assessed at its cash value. Confessedly, this plaintiff's property was assessed at fifteen per cent below that value. Surely, upon the mere fact that other property happened to be assessed at thirty per cent below the value, when this did not come from any design or systematic effort on the part of the county officials, and when plaintiff has had a hearing

as to the correct valuation and appeal before the board of equalization, the proper tribunal for review, it. cannot be that it can come into a court of equity for an injunction or have that decision of the board of equalization reviewed in this collateral way."

Mr. Cooley, in his very excellent work on Taxation, page 753, third edition, in his text on values for assessment, has this to say: "One whose property has not been assessed above its true value or its cash value, or whatever may be the statutory specification as to value, cannot claim that his assessment is invalidated because the property of other persons is assessed at less than such value, for the presumption is that those who made the assessment acted not arbitrarily, but according to the best of their information and belief." It is urged by counsel for respondent that as a matter of fact the board of equalization actually reduced appellant's assessment to less than $1.10 per acre. We do not feel called upon to enter into a long mathematical calculation to ascertain the facts as to this statement; in our view of the case it is wholly unnecessary to a determination of the question before us. Counsel for appellant complains of the action of the lower court in writing him the letter marked exhibit "C" to his complaint, and thereafter refusing to grant him the relief promised. The statement of a judge when not in session as a court or his letter is not a judgment. After writing the letter and before he signed or ordered the clerk to enter up a judgment, the learned judge may have, and doubtless did, become convinced that it would be error to render the judgment suggested by his letter. Of course it was unfortunate, and may have misled counsel for appellant; but, if the statement of counsel for respondent be true that the board of equalization reduced the assessment to less than $1.10 per acre, it was a much greater reduction than the letter of the judge promised, and appellant did not suffer thereby. Counsel for respondent made the bold assertion in his oral argument that he had had an expert go over the entire figures of the lands and assessment of the appellant, and they showed a reduction to less than $1.10 per acre.

He convinces us that he would not make this statement unless he felt entirely satisfied of its truth, but he does not sufficiently arouse our curiosity to indulge in this long and intricate mathematical calculation to vindicate his expert, especially when we do not deem it essential to a determination of this case.

Our conclusion is that the order of the court and the judgment thereon sustaining the demurrer to the complaint must be sustained, and it is so ordered with costs to respondent.

Ailshie, J., and Sullivan, J., concur.