(November 4, 1914.)

# NORTHERN PACIFIC RAILWAY CO., a Corporation, Appellant, v. COUNTY OF CLEARWATER et al., Respondents.

[144 Pac. 1.]

COMPLAINT — ALLEGATIONS OF — DEMURRER — ILLEGAL ASSESSMENT — OVER-VALUATION — UNDER-VALUATION — ARBITRARY TAXATION — INJUNCTION AGAINST—REMEDY—EQUITY JURISDICTION.

1. Where a railroad company is the owner of about 4,000 acres of land consisting of about one hundred 40-acre tracts distributed over a county and in many different sections, and it is alleged in the complaint that the assessor "by a systematic, intentional and illegal method of assessing said land placed thereon a valuation and assessment which after being equalized by the state board of equalization exceeded the full cash value of the property by 25 per cent," and that other and similar land of the same value in said county was assessed and valued at 75 per cent less than the appellant's lands, and that said valuation and assessment were placed on appellant's lands by the assessor without making any investigation whatever and in violation of law and of the rights of appellant, and said valuation and assessment were made with the design, systematic and illegal effort on the part of the assessor to unjustly and unlawfully discriminate against appellant and its property, *held*, that said allegations show an unlawful, illegal and fraudulent discrimination by the assessor in assessing said property.

2. In this class of cases courts of equity will not interfere to correct mere errors of judgment as to valuation of property, since value is a matter of opinion; but where the allegations of the complaint show that the officer refused to exercise his judgment and by an arbitrary and capricious exercise of official authority has fraudulently attempted to defeat the law instead of enforcing it, a court of equity will relieve against such illegal and fraudulent actions of an assessor.

3. *Held*, that the facts alleged in the complaint, if proven, would establish fraud as a conclusion of law.

4. *Held*, that where an assessor by a systematic, intentional and illegal method assessed property at more than double what he assessed other property of the same class and value, he perpetrates a fraud from which a court of equity, upon proper application, will relieve.

5. In this case it is not a question of a mere difference of opinion as to the value of the property, but it is a question of no

opinion or judgment at all as to the value, since it is admitted by the demurrer that the assessor did intentionally and illegally assess said property at more than double what other property of the same kind and value was assessed, and the law presumes that he intended the natural, inevitable effect of his acts in assessing said property.

6. Equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property of the same class or kind, for the reason that absolute uniformity under an honest judgment may not be obtained; but where it is made to appear that honest judgment was not used and that an illegal and unlawful value was placed upon the property by the assessor, the injured party may obtain redress in a court of equity.

7. In a case where the valuation is so unreasonable as to show that the assessor must have known that it was wrong and that he could not have been honest in fixing it, *held*, that such a valuation is clearly a fraud upon the owner.

8. In a case of this kind, the trial court should require the plaintiff to pay the amount of taxes which the allegations of the complaint show are reasonable and just before issuing any restraining order against the collection of the portion of the tax alleged to have been illegally assessed.

APPEAL from the District Court of the Second Judicial District for Clearwater County. Hon. Edgar S. Steele, Judge.

Action to restrain the collection of a tax alleged to have been illegally made. Demurrer to complaint sustained by trial court. *Reversed.*

Cannon & Ferris and James E. Babb, for Appellant.

The facts pleaded in the case at bar, admitted as they are by the demurrer, establish fraud as a conclusion of law, and the allegation that these acts were fraudulent would not strengthen the complaint or be in any way essential. (*Louisville Trust Co. v. Stone,* 107 Fed. 305, 46 C. C. A. 299; *Andrews v. King County,* 1 Wash. 46, 22 Am. St. 136, 23 Pac. 409; *Raymond v. Chicago Union Traction Co.,* 207 U. S. 20, 28 Sup. Ct. 7, 52 L. ed. 78, 12 Ann. Cas. 757.)

The appellant has shown that its property has been unfairly assessed by the assessor, and that it has been assessed

in excess of its full cash value. It is therefore entitled to relief at the hands of a court of equity. (*Atchison etc. R. Co. v. Sullivan,* 173 Fed. 456, 97 C. C. A. 1; *Humbird Lumber Co. v. Thompson,* 11 Ida. 614, 83 Pac. 941; *Chicago etc. R. Co. v. Board of Commissioners,* 54 Kan. 781, 39 Pac. 1039; *Albuquerque Nat. Bank v. Perea,* 147 U. S. 87, 13 Sup. Ct. 194, 37 L. ed. 91; *Otter Tail County v. Batchelder,* 47 Minn. 512, 50 N. W. 536; *Dickson* v. *Kittitas County,* 42 Wash. 429, 84 Pac. 855.)

The discrimination between the property of appellant and all other property in the county is of such a character as to constitute constructive fraud, and therefore a court of equity should grant relief. (*The Railroad Tax Cases,* 13 Fed. 722, 8 Saw. 238; *Santa Clara County v. Southern Pac. R. Co.,* 18 Fed. 385; *Cincinnati Southern Ry. v. Guenther,* 19 Fed. 395; *Northern Pacific Ry. Co. v. Pierce County,* 77 Wash. 315, 137 Pac. 433; *Louisville etc. R. Co. v. Bosworth,* 209 Fed. 380, 452; *First Nat. Bank v. Board of Commrs.,* 36 Colo. 265, 84 Pac. 1111; *First Nat. Bank v. Holmes,* 246 Ill. 362, 92 N. E. 893; *Citizens' Nat. Bank v. Board of Commrs.,* 83 Kan. 376, 111 Pac. 496; *Savage v. Pierce County,* 68 Wash. 623, 123 Pac. 1088; 2 Cooley on Taxation, 3d ed., p. 1459; *Ex parte Ft. Smith & Van Buren Bridge Co.,* 62 Ark. 461, 36 S. W. 1060; *Randell v. City of Bridgeport,* 63 Conn. 321, 28 Atl. 523.)

A. A. Holsclaw, G. W. Tannahill, J. H. Peterson, Atty. Genl., J. J. Guheen, T. C. Coffin and E. G. Davis, Assts., for Respondents.

No appeal lies from the decision of the board of county commissioners, sitting as a board of equalization. (*Feltham v. Board of County Commissioners,* 10 Ida. 182, 77 Pac. 332; *Olympia Waterworks Co. v. Board of Equalization,* 44 Pac. 267; *General Custer Min. Co. v. Van Camp,* 2 Ida. 40, 3 Pac. 22; *Humbird Lumber Co. v. Ramey,* 10 Ida. 327, 77 Pac. 433.)

Nor can mere irregularity in the rightful exercise of the powers of the board of equalization be reviewed by *certiorari.*

(*Murphy v. Board of Equalization,* 6 Ida. 745, 59 Pac. 715; *Braden v. Union Trust Co.,* 25 Kan. 362.)

The judge of the district court had not jurisdiction of the subject matter.   (*People ex rel. Alexander v. District Court,* 68 Pac. 242; *State Railroad Commission v. People,* 98 Pac. 7; *Speer v. People* (Colo.), 122 Pac. 768.)

A taxpayer is not entitled to relief in equity, except upon condition of doing equity on his part, which requires payment of all the taxes assessed, or which should be assessed against him.   (*Tacoma Ry. & Power Co. v. Pierce Co.,* (Wash.) 193 Fed. 90.)

Courts of equity are not prone to move for the relief of an individual or single corporation in cases like the one at bar. (*Andrews v. King County* (Wash.), 23 Pac. 409; *Raymond v. Chicago Union T. Co.,* 207 U. S. 19, 52 L. ed. 78; *Taylor v. Louisville Ry.,* 88 Fed. 350; *Washington Water Power Co. v. Kootenai County,* 210 Fed. 867.)

The fact that a valuation is excessive does not entitle the party to relief at equity, such a relief being granted only in cases of fraud or a clear adoption of a fundamentally wrong principle.   (*Chicago B. & Q. R. Co. v. Babcock,* 204 U. S. 585, 598, 27 Sup. Ct. 326, 51 L. ed. 636, 640.)

Equity will relieve against discrimination in valuation and assessments where the uniformity of taxation guaranteed by the constitution is violated in two cases only: First, where the statute of the state operates to cause a large class of persons or species of property to be assessed or taxed at a higher rate than all other property; and second, where the revenue officers by a system or scheme adopted in making valuations and assessments discriminate, with the effect of destroying uniformity against a large class of persons or species of property.   (*State Railroad Tax Cases,* 92 U. S. 575, 612, 23 L. ed. 663, 673; *People ex rel. Williams v. Weaver,* 100 U. S. 539, 25 L. ed. 705; *Pelton v. Commercial Nat. Bank,* 101 U. S. 143, 25 L. ed. 901; *Cummings v. Merchants' Nat. Bank,* 101 U. S. 153, 25 L. ed. 903; *Board of Supervisors v. Stanley,* 105 U. S. 305, 26 L. ed. 1044, 1120; *Hills v. National Albany Exchange Bank,* 105 U. S. 319, 26 L. ed. 1052; *Evansville Nat. Bank v.*

*Britton,* 105 U. S. 322, 26 L. ed. 1053; *Boyer v. Boyer,* 113 U. S. 689, 5 Sup. Ct. 706, 28 L. ed. 1089; *German Nat. Bank v. Kimball,* 103 U. S. 732, 26 L. ed. 469; *Exchange Nat. Bank v. Miller,* 19 Fed. 372; *Wagoner v. Loomis,* 37 Ohio St. 571; *Stanley v. Board of Supervisors,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. ed. 1000.)

SULLIVAN, C. J.—This action was brought by the Northern Pacific Railway Company against Clearwater county, its assessor, treasurer, taxpayer and auditor, to restrain the collection of certain taxes alleged to have been illegally assessed for the year 1913, on about 4,000 acres of land owned by the appellant in Clearwater county, and for other relief; also for a preliminary writ of injunction to restrain the tax collector of said county and his successors in office from extending said property upon any delinquent list or delinquency certificates, and enjoining the defendants from advertising said property for sale and from selling the same and from making certificates of sale, and other relief.

A demurrer was filed to said complaint on four grounds:

· 1. That the complaint does not state facts sufficient to constitute a cause of action.

2. That the court had no jurisdiction to hear and determine said cause.

3. That it affirmatively appears that the board of equalization of Clearwater county and the state board of equalization have exclusive and original jurisdiction of the matters alleged in the complaint, and that said boards have passed upon the matters alleged and charged in plaintiff's complaint and rendered their judgment thereon, and that the same was filed and was and is *res adjudicata.*

4. That it affirmatively appears that the plaintiff has not tendered the amount of taxes due, owing and unpaid, or the amount alleged in plaintiff's complaint to be just and reasonable, for the taxes due, owing and unpaid, upon said property, for the year 1913.

Said demurrer was sustained by the court and the plaintiff elected to stand upon its complaint in said action and declined

to amend, and judgment of dismissal was entered. The appeal is from the judgment.

It is stated by the appellant in its brief that the court sustained the demurrer for the reason that the court was of the opinion that fraud was not alleged in the complaint, and for that reason the complaint did not state facts sufficient to warrant a court of equity in taking jurisdiction of said matter.

It is alleged in the complaint, in substance, that the appellant is the owner of some 4,000 acres of unimproved land situated in Clearwater county, and said land is specifically described by an exhibit attached to the complaint, wherein it appears that said land consists of about 100 forty-acre tracts scattered throughout said county situated in many different sections; that the assessor by a systematic, intentional and illegal method of assessing said property placed thereon a valuation and assessment, which after being equalized by the state board of equalization exceeded the full cash value of the property by twenty-five per cent; that the full cash value of said property was at that time and now is the sum of $62,334.75, and that the valuation placed thereon by the assessor, after being equalized by the state board was and is the sum of $81,000. (The full cash value of each and every subdivision of said land is specifically set forth in the complaint as is also the valuation and assessment placed thereon by the assessor.) It is also alleged that it was the duty of the assessor in assessing said land to actually determine, as nearly as possible, the full cash value thereof, and that the assessor, in direct violation of his duty in this regard, failed and neglected to take any steps whatever to learn the full cash value, but, on the contrary, valued and assessed the same and all thereof at a flat and uniform valuation, and that said lands differ in character and value and have no flat or uniform value; that the valuation and assessment was placed thereon by said assessor without making any investigation whatever to actually determine as nearly as practicable what all the tracts of land and each thereof were worth in money, or the full cash value thereof, as is the duty of said assessor

under the law, but, on the contrary, said assessor, disregarding his duty in this regard, adopted a speculative valuation on said lands and all thereof; that said valuations and assessments so made are greater and higher than the assessments and valuations made by said assessor on other lands in Clearwater county of the same general character and of the same full cash value, and are unfair, unjust and unequal as compared with the assessments and valuations made by said assessor on land in the same locality and of the same class, character and full cash value; that all lands in said county, save and except the lands here in controversy, are valued and assessed by said assessor at only 50 per cent of their full cash value; that the valuation and assessment made by said assessor against the property of appellant is 25 per cent more than its full cash value, and is unfair, unequal and unjust, and the plan and scheme adopted by said assessor in assessing appellant's property at 25 per cent in excess of its full cash value, and in assessing all other lands in said county at only 50 per cent of their full cash value is in violation of law and of the rights of appellant, and is the result of design and a systematic effort on the part of said assessor to unjustly and unlawfully discriminate against appellant and its property; that appellant for the purpose of having the said valuation so made by the assessor reduced to the full cash value of said property, as required by law, did on or about the 26th of July, 1913, and within the time required by law, and while the board of equalization of Clearwater county was in session, make application to said board for the reduction of said taxes, but the said board refused to make any reduction whatever from the valuation and assessment placed upon said property, and denied appellant's application and the whole thereof; that the total tax upon said property after being equalized by said state board of equalization has been extended upon the assessment-roll for Clearwater county, and amounts to the sum of $1,293.99, and that a just and fair proportion of said tax of $1,293.99, as compared with the valuation and assessment of all other lands in the county of Clearwater, is the sum of $485.25, which sum was tendered

by appellant and refused prior to the commencement of this action. The appellant also alleges that the assessor threatens to claim a penalty of ten per cent in addition to the said tax of $1,293.99, and further threatens to make out delinquent certificates for the year 1913 covering the property here involved, and that said delinquent certificates will be sold by the defendant county auditor, all of which will cause a cloud upon appellant's title and cause great and irreparable damage; that the appellant has no plain, speedy or adequate remedy at law, and that if appellant should pay said alleged tax of $1,293.99, as claimed by defendants, the same would be distributed and apportioned to the clerk of each incorporated city, town or village, and each independent school district, and every other tax district having a treasurer in said county of Clearwater, and also to the state of Idaho; and this would require appellant to bring a multiplicity of suits to recover the sum so paid in excess of $485.25, the amount which appellant alleges is legally and justly due. The complaint contains the usual prayer for relief in an action of this character.

Under the well-established rule, on demurrer to the complaint all facts well pleaded in the complaint are admitted. The question presented is whether or not appellant is entitled to any relief at the hands of a court of equity where it is admitted that appellant's property, consisting of about 4,000 acres of land, embracing many separate tracts in various parts of the county, has been by a systematic, intentional and illegal over-valuation assessed at twenty-five per cent over its full cash value, and at the same time all other lands in said county were assessed at fifty per cent of their full cash value; and where it is also admitted that such assessment so made by the assessor was with the design and systematic effort on his part to unlawfully and unjustly discriminate against appellant and its property. Stated in another way: Is the discrimination alleged in this case, amounting to seventy-five per cent, so unreasonable as to amount to a constructive fraud upon appellant?

It must be borne in mind that this is not a case of occasional or accidental discrimination which might be attributed to the fallibility of human judgment, a mistake or other accidental cause, but it is a case where it stands admitted that the discrimination is due to systematic and intentional and unlawful over-valuation of appellant's hundred or more different tracts of land, and the under-valuation of all other property in the county, and where the difference between the valuation of property so made amounts to seventy-five per cent against appellant.

The trial court in sustaining the demurrer said: "I have no doubt but that a court of equity may take hold of these matters, but it is only on one condition, that is, only when the facts are stated which invoke the powers of a court of equity. There must be either fraud or such facts as show the badge of fraud, or the court will not take hold of it. There is not a single allegation in this case that even squints at a fraud."

While it is true the word "fraud" does not appear in the complaint, the language used in the complaint charges fraud on the part of the assessor as clearly as if it had used it a dozen times, and the using of the word "fraud" would not add anything to the complaint. It is alleged that said discrimination is due to the "systematic, intentional and unlawful valuation" of the property, and the under-valuation of similar property of others situated in said county. A difference of seventy-five per cent is alleged.

The precise question presented here was before the supreme court of Washington in the case of *Andrews v. King County*, 1 Wash. 46, 22 Am. St. 136, 23 Pac. 409. In the complaint in that action it was alleged, among other things, that the assessor uniformly assessed demands secured by mortgages on real estate at their par value, and uniformly assessed lands, improvements and personal property at from one-tenth to one-fourth of their actual cash value. A demurrer was sustained to the complaint, plaintiff elected to stand upon the complaint, and the action was dismissed. The ruling of the court on said demurrer was reversed on appeal, and in the

course of the decision the court stated that in the investigation of the case there were three leading propositions to be considered, viz.: First, in order to put in issue the question of fraud, is it necessary to allege in terms that defendants were guilty of fraud? Second, conceding the allegations in the complaint to be true, are the facts there stated sufficient to establish a *prima facie* case of fraud? Third, had the plaintiff any other remedy than the one invoked? And the court said: "So far as the first proposition is concerned, we are clearly of the opinion that, if the complaint alleges a state of facts which if proved to be true would establish fraud as a conclusion of law, that it is a sufficient allegation of fraud; and that the declaration of the pleader that such acts were fraudulent is in nowise essential or necessary to put the question of fraud in issue." The court then states that the essential idea of the statute is that each person shall pay a tax in proportion to the value of his property, and the fact that plaintiff's property is admitted to be assessed at its par value will not deprive him of the constitutional guaranty if by the under-valuation of other property he is compelled to bear more than his just proportion of the burden of taxation, and after stating two cases or propositions, says: "The just principle of taxation is equally violated in both cases, and the constitutional mandate that 'all taxes shall be equal and uniform, and that the assessment shall be according to the value of the property,' is equally ignored. . . . . Nor will courts of equity interfere to correct errors in judgment as to valuation, because, as has been well said by Judge Cooley, 'value is matter of opinion,' and, when the law has provided officers upon whom the duty is imposed to make the valuation, it is the opinion of those officers to which the interests of the parties are referred. But, according to the same learned author, 'it is possible, however, that there may be circumstances under which the action of the officers will not be conclusive.' (Cooley, Taxation, 218.) And one of those circumstances is where the officer refuses to exercise his judgment, and, by an arbitrary and capricious exertion of official authority, seeks fraudulently to defeat the law, instead of enforcing it. In

such a case the taxpayer will not be left completely at the mercy of the assessor.'' And the court further concludes from the allegations of that complaint that ''the conclusion is inevitable that the honest judgment of the officer was not exercised; and that a rule or system of valuation was adopted by the assessor, and confirmed by the board of equalization, which was designed to discriminate unfairly against one class of taxpayers, and which was in plain contravention of the constitutional law, which provides that 'all taxes shall be uniform, and that the assessment shall be according to the value of the property.' '' The court there states that the uniform rule of the higher courts has been that while equity will not interfere to correct mere mistakes or inadvertencies, or to contravene or set aside the judgment of assessors or boards of equalization in relation to values, it will interfere when the officers fraudulently, capriciously or tyrannically refuse to exercise their judgment by adopting a rule or system of valuation designed to operate unequally and to violate a fundamental principle of the constitution.

The complaint under consideration does not use the words ''fraudulently,'' ''capriciously'' or ''tyrannically,'' but uses language equally as strong. The assessor is charged with a systematic design and effort to unjustly and unlawfully discriminate against appellant and its property. If that language does not mean that the officer fraudulently, capriciously and tyrannically did the acts complained of, then we are not able to understand the English language. The facts pleaded in the case at bar established fraud as a conclusion of law, and had the complaint contained the allegations that these acts were fraudulent, capricious and tyrannical, it would not strengthen the complaint or be in any way essential.

It was said in *Louisville Trust Co. v. Stone,* 107 Fed. 305, 46 C. C. A. 299, that ''if the allegations of the bill are made out, there exists in respect to the property of complainant, and others similarly situated, a systematic, intentional and illegal under-valuation of other property by the taxing officers of the state, which necessarily effects an unjust discrimination

against the property of which the plaintiff is the owner, and a bill in equity will lie to restrain such illegal discrimination, and that in such cases federal jurisdiction will arise because of the equal protection of the laws guaranteed by the fourteenth amendment.''

When an assessor does by a systematic, intentional and illegal method assess one owner's property at more than double what he assesses other property of the same class and value, he perpetrates a fraud from which a court of equity on proper application will relieve. Here is alleged an illegal and fraudulent discrimination on the part of the assessor in making said assessments; that he did not exercise the judgment required by law to be exercised by him in making such assessments. Said assessments were designed to operate unequally and to violate a fundamental principle of the constitution and statute, and equity may properly interfere to restrain the operation of this fraudulent and illegal exercise of power by the assessor. Said assessment was not made because of any defect or difference in judgment, but was made intentionally and illegally in order and for the purpose of effecting an unjust discrimination against the property so assessed. It is not a question of mere difference of opinion as to the value of the property, but it is a question of no opinion or judgment at all as to its value. It is admitted that it was made intentionally and illegally at more than double what other property of the same kind was assessed.

It was held in *Humbird Lumber Co. v. Thompson,* 11 Ida. 614, 83 Pac. 941, that ''If the plaintiff has shown by its complaint that its property has been unfairly assessed by defendant, Thompson, as assessor of Kootenai county, in any manner whatever, or that it has been assessed in excess of its actual cash value, then it certainly has a remedy.''

It is admitted by the demurrer that appellant's property has been unfairly assessed—that it has been assessed at more than double what other similar property has been assessed in said county, and that such assessment was made illegally and intentionally so, with intent to disregard the law.

In *Atchison etc. R. Co. v. Sullivan,* 173 Fed. 456, 97 C. C. A. 1, referring to the assessor, the court said:

"His acts, nevertheless, were in violation of the statute, their natural and inevitable effect was to diminish the burden of taxation upon the property within his jurisdiction and to increase it upon the railroad property, and, however innocent in actual intent he may have been, his acts were as injurious to the owners of railroad property as if he had actually intended to discriminate against them, and the law conclusively presumes that he intended the natural and inevitable effect of his deeds." And referring to the assessor and county commissioners acting as a board of equalization, the court said: "It was sufficient to sustain its cause that they intended to disregard the law, and that the natural and inevitable effect of that violation was the increase of its share of the burden. . . . . A systematic and intentional under or over assessment of one or more classes of property in violation of the law whereby one or more classes of property is to be made to bear an undue proportion of the burden of taxation, presents a good cause of action for relief from the payment of the unjust part of the proposed tax," and the court holds that the acts shown there amounted either to intentional fraud upon the complainant or to such a gross mistake that it was a fraud in law.

The discrimination alleged in this complaint does not come or result from a mistake in judgment, but does, as in effect alleged, result from a systematic, intentional and illegal disregard of the law by the assessor.

The case of *Taylor v. Louisville etc. R. Co.,* 88 Fed. 350, 31 C. C. A. 537, is an instructive case and reviews many cases upon the subject under consideration, and says: "They [the cases reviewed] merely emphasize the point that equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property; that such inequalities, due to mistake, to the fallibility of human judgment, or to other accidental causes, must be borne, for the reason that absolute uniformity cannot be obtained; that, in other words, what may be called 'sporadic cases of discrimina-

tion' cannot be remedied by the chancellor,'' and holds that
the chancellor can only interfere when it is made clear that
there is with respect to certain species of property a system-
atic, intentional and unlawful under-valuation of property
for taxation by the taxing officers which necessarily effects
an unjust discrimination against the species of property of
which the complainant is an owner.   And further on the court
said: ''The interference by the chancellor in the case at bar
and in the Cummings case rests on something equivalent to
fraud in the tribunal imposing the tax.''

In that case the property of the plaintiff was only assessed
at its full value, while here it is admitted that the property
of the appellant is assessed at twenty-five per cent in excess
of its full cash value, and other property of a similar charac-
ter and value is assessed at fifty per cent less than its full
cash value, and both cases, to wit, the assessment of appel-
lant's property at twenty-five per cent more than its cash
value, and the assessment of similar property at fifty per cent
less than its cash value, show a systematic, intentional and
illegal discrimination from which a court of equity ought to
grant relief.

While exact equality and uniformity may not be had in the
assessment of property, and while the mistakes and omissions
of the assessor may not at all times be the subject of adequate
remedy of the courts, yet for the gross injustice and violation
of the law complained of in this action there ought to be some
remedy, and there is a remedy.   The discrimination alleged
in the complaint is so unreasonable, so unjust—so intention-
ally unjust, as to amount in law to constructive fraud upon
the appellant.

There is a clear distinction between this case and the *Hum-
bird Lumber Co. v. Thompson, supra.*   In that case there was
no contention that the discrimination there charged was the
result of systematic, intentional and unlawful effort on the
part of the assessor to illegally assess the property there
involved.

It is contended by both the attorney general and the other
attorneys for respondent that since this case does not involve

a class of persons or a class of property, the court has no jurisdiction to grant relief; that a court can only grant relief where there is a class of property or the interests of a number of property owners involved.

In *Otter Tail County v. Batchelder*, 47 Minn. 512, 50 N. W. 536, it was sought to be shown that while the lands in general in the township referred to were assessed at less than one-half of their value, the unimproved lands of the defendants were assessed at nearly fifty per cent above their value. The defendants owned a number of different tracts of land and the court held that such proof should be considered in connection with the circumstances that this inequality was not with respect to a single tract of land, which might more readily be accounted for on the ground of error of judgment, but to nearly sixty different tracts owned by those nonresident, defendants, and the court said: "Such facts being shown, it would be difficult, in the absence of opposing proof or explanation, to escape the conclusion that the assessment had been intentionally made, without regard to the requirements of the law, and upon a basis of systematic inequality," and thereupon reversed the case.

In the case at bar there are at least one hundred distinct 40-acre tracts distributed over Clearwater county involved, and that brings this case virtually within the rule above stated.    (See, also, *Dickson v. Kittitas County*, 42 Wash. 429, 84 Pac. 855.)

It was held in *First National Bank v. Holmes*, 246 Ill. 362, 92 N. E. 893, that if property is arbitrarily assessed fraudulently at too high a valuation, a court of equity will interfere to protect a taxpayer in his constitutional rights. It was also there held that where the property of corporations was assessed so far above the property of individuals as to justify the inference of intent to require them to pay more taxes in proportion to the value of the property than private owners, a court of equity would grant relief.

Common experience teaches that the judgment of reasonable men will differ as to the value of property, and mere under-valuation or over-valuation, unless glaring and gross,

is not sufficient evidence of fraudulent intent; but in a case where the valuation is so unreasonable as to show that the officer must have known that it was wrong and that he could not have been honest in fixing it, such a valuation is clearly a fraud upon the owner.

As touching upon the relief against discriminating assessments in state courts, see Judson on Taxation, sec. 470 et seq.; *Louisville & N. R. Co. v. Bosworth,* 209 Fed. 380.

The allegations of the complaint show that there has been a systematic, intentional and illegal discrimination against appellant in the assessment of its said lands, and that appellant cannot pay the alleged tax under protest and thereafter recover back the excess without bringing a multiplicity of suits because of the distribution which is made of taxes when collected by the proper officers; and it further appears from the allegations of the complaint that the action taken by the assessor therein alleged casts a cloud upon the title of said land. Under the decision of the supreme court of the United States in *Raymond v. Chicago Union Traction Co.,* 207 U. S. 20, 22, 28 Sup. Ct. 7, 52 L. ed. 78, 12 Ann. Cas. 757, appellant is entitled to proper relief upon establishing the allegations of his complaint.

In this class of cases the court should require the plaintiff to pay the amount of taxes which the allegations of the complaint show are reasonable and just before issuing any order restraining the collection of said taxes.

We do not think there is any danger of a large number of taxpayers going into court to restrain the collection of taxes if the taxing officers will carefully and conscientiously perform the duties imposed on them by law. The proceedings in courts will only be resorted to when illegal and fraudulent methods are resorted to in the assessment of property.

The judgment must be reversed, and it is so ordered, and the cause is remanded, with instructions to overrule the demurrer and permit the defendants to answer. Costs are awarded to the appellant.

Truitt, J., concurs.