(No. 6013.   October 14, 1933.)

In the Matter of the Assessment of Certain Property of the WINTON LUMBER COMPANY, a Corporation.   WINTON LUMBER COMPANY, a Corporation, Appellant, v. KOOTENAI COUNTY, a Municipal Corporation, JAMES S. ZOMES, HENRY CARAWAY, HENRY G. WEBER, Board of County Commissioners, Sitting as a Board of Equalization of Kootenai County, Idaho, Respondents.

[26 Pac. (2d) 124.]

Robt. H. Elder and Ezra R. Whitla, for Appellant.

J. Ward Arney, for Respondents.

BUDGE, C. J.—On July 11, 1932, appellant filed a protest with the Board of County Commissioners of Kootenai county, sitting as a board of equalization, with respect to the assessment of its property for the year 1932, in which it claimed (1) that property of other land owners in Kootenai county was assessed at 50 per cent of its full and actual value, while appellant's property was assessed at more than its full cash value; (2) that the valuation of its property described in the protest should be reduced 50 per cent to equalize the same with other property in the county; (3) that the assessments were discriminatory and unlawful and should be reduced 50 per cent, and prayed that such reduction be made. On July 16, 1932, the board made its order rejecting the protest and denying relief, except as to certain property not involved here. Appellant thereupon appealed to the district court from said order, and after a hearing the district court made and filed its findings of fact wherein it found: (1) that no discrimination was shown in the assessment of timber lands, cut over and burned lands, and standing timber; (2) cut over and burned lands, grazing lands and lands upon which timber is standing were valued by the assessor in a sum greatly in excess of actual cash value of such lands; (3) the board of equalization should have reduced the value of the lands above mentioned; (4) that the fair cash value of such lands for taxation purposes is as follows: grazing lands $1 per acre; cut and burned over lands $1 per acre; land upon which timber is standing $1.25 per acre; and (5) that the valuations upon growing timber made by the assessor are reasonable. Judgment was entered in accordance with such findings, from which judgment this appeal is taken.

Appellant specified and relies upon twelve assignments of error which may be summarized as follows: (a) that the court erred in finding that no discrimination in the assess-

ment was shown; (b) that the court erred in its findings of valuation for taxation purposes of grazing lands, cut and burned over lands, land upon which timber is standing, and growing timber, and such findings and the judgment entered thereon are not supported by the evidence; (c) that the court erred in refusing to reduce such valuations as sought by appellant's protest; and (d) that the court erred in finding that a separate value should be determined for the land and for the timber growing thereon.

■ The last assignment of error is not supported by any authorities and is not discussed in the briefs and will therefore not be considered.

■ Taking up the question of discrimination, the uncontradicted evidence of the assessor discloses that the assessments of grazing land, cut and burned land and timber, according to the respective classifications, were uniform throughout the county. The finding that there was no discrimination was therefore supported by the evidence.

■ The remaining questions presented relate to the valuations for assessment purposes placed upon the various classifications of property involved, as reviewed and modified by the district court. It should be here observed that the assessor and the county board of equalization are constitutional officers, whose powers in the matter of assessment of property and equalization of such assessments cannot be usurped, and the function of the district court and this court upon appeal questioning their acts is limited to a review, and affirmance, reversal or modification thereof. (*First Nat. Bank v. Board of Commrs.*, 40 Ida. 391, 232 Pac. 905; I. C. A., secs. 61-1911, 30-1111.)

Two witnesses were examined in behalf of appellant and testified that in their opinion the land in question had no value at the time of the assessment, based chiefly upon production cost statements covering all of the property which tended to show that timber could not be produced from said lands at a profit. However, such testimony that the property was valueless is negatived in many respects by the pleadings and other evidence, namely: The protest itself

asks that the assessment be reduced 50 per cent, impliedly admitting that the property is worth one-half of the value placed on it by the assessor. There was testimony to the effect that appellant still carried the value of the land on its books at what it paid for it. In computing production costs all the land was considered together and was not segregated into statutory classifications adopted by the assessor, namely, grazing land, cut and burned over land, and land upon which timber is standing, and in such computation it was admitted that all timber except white pine was disregarded, although it was also admitted that if yellow pine, fir and tamarack and other timber were logged it might decrease the production costs, and that logging costs might be cheaper if all the timber was logged off. There was testimony that appellant was willing to pay taxes on the land on the basis of fifty cents per acre and $1 a thousand feet on white pine stumpage. One of appellant's witnesses also testified: ''I am not certain that the Winton Lumber Company would not agree to sell all this stumpage for $1.00 a thousand right now.'' Evidence was introduced by appellant that the land was valuable for timber raising. In the computations and estimates of appellant introduced in evidence, a valuation of 50 cents per acre and $1 per thousand feet for white pine was set forth. There was evidence to the effect that in 1929 or 1930 the government, in making an exchange, fixed the value of white pine logs at $4 per thousand feet. One witness testified that the property had no value because it could not be operated at a profit but that he would not want to give it away. There was also testimony to the effect that two or three years previously the government had allowed appellant $1 or $1.25 per acre for cut over land with mixed timber on it in exchange for stumpage of an equal value. The foregoing testimony negatives or tends to negative the testimony that the land was valueless.

The assessor testified that his valuations were as follows: cut and burned land $5 an acre; grazing land $2.50 an acre; that as to timber land he placed the value at $2.50 and

added the value of the timber, namely, white pine at $2.50 per thousand feet, yellow pine at $1 per thousand feet and mixed timbers at 50 cents per thousand; that such valuations are for assessment purposes and the actual cash value was double that amount; also that such figures included a fifteen per cent decrease which was allowed in 1931 and 1932. The classifications made by the assessor were in accordance with I. C. A., sec. 61–315.

It is true that the assessor, after fixing the value as above stated, also stated substantially that it had no value, that is, as we construe his entire testimony, that there would be no profitable returns from its operation at the time of the assessment. This might be true and no doubt is true with many other classes of property at the present time. The production costs of appellant, without classification of lands and disregarding all timber except white pine, shows that the cost from tree to market without stumpage charges was in excess of the market prices, at the time of the assessment. However, the determination of the value of this property is not necessarily limited, under the facts of this case, to the cost of production or placing the timber on the market, or the profit that might be made. Such method of valuation is not exclusive, but is merely one of the factors which may be considered.

The question of the value of property is one of fact and the assessor is required to value property at such amount as he believes the same to be fairly worth in money at the time such assessment is made. (I. C. A., sec. 61–202.) The board of county commissioners sitting as a board of equalization must determine all complaints in regard to the assessed valuation of any property entered upon the assessment-rolls and must correct such valuation by adding thereto or subtracting therefrom such amount as may be necessary in order to make such valuation conform to the full cash value. (I. C. A., sec. 61–402.) The board of county commissioners, sitting as a board of equalization, upon the hearing of a protest, base their valuation upon the evidence submitted and facts as to value.

The rule announced in *Northwestern Improvement Co. v. Pierce County*, 97 Wash. 528, 167 Pac. 33, must also be kept in mind, namely:

"In reviewing these assessments, we must bear in mind that we are dealing largely with questions of opinion as to the value of these lands for the purpose of taxation. It has too long been the law to be now doubted that equity will not interfere to set aside the opinion of taxing officers in fixing the value of lands for purpose of taxation, until it is shown that such arbitrariness or inequality enters into the assessment as to violate the fundamental principles of taxation. It is also well settled that in making an assessment it is presumed the assessor has only performed his full duty, and the burden of showing otherwise is cast upon those who attack it. 'The assessor and board of equalization act in a *quasi* judicial capacity in making or equalizing assessments. The law presumes that they have performed their duty in a proper manner. Where the rights of the public require it, the presumption in favor of due performance is liberal, and the evidence to overthrow it must be clear.' *Templeton v. Pierce County*, 25 Wash. 377, 382, 65 Pac. 553, 555; *National Lumber & Mfg. Co. v. Chehalis County*, 86 Wash. 483, 488, 150 Pac. 1164; *Hillman's Snohomish County Land & R. R. Co. v. Snohomish County*, 87 Wash. 58, 151 Pac. 98; *Heuston v. King County*, 90 Wash. 200, 202, 155 Pac. 773."

We are of the opinion that there was sufficient competent evidence introduced upon the hearing before the district court to justify the findings complained of and the judgment based thereon.

The judgment is affirmed. Costs awarded to respondents.

Givens and Holden, JJ., concur.

Wernette, J., being disqualified, did not participate.

MORGAN, J., Dissenting.—The trial judge, following the decision of this court in *First National Bank v. Board of Commrs.*, 40 Ida. 391, 232 Pac. 905, incorporated in his

judgment an assessment-roll of certain property of appellant and fixed the value of said property for taxation purposes. If this is error, and it seems to me it is, responsibility for it rests with this court rather than with the trial judge, for in that case the court said:

"Granting that the assessor and the county board of equalization are constitutional officers whose powers cannot be usurped, it does not follow that the district court in reviewing and reversing or modifying their acts under the provisions of this statute is usurping their powers."

Thereupon this court held, in effect, that a trial judge might, as in that case it did, assess bank stock. Furthermore, being dissatisfied with the result of the trial court's assessment, it proceeded, itself, to reassess the stock for purposes of taxation. It having held, in effect, courts may, on appeals from acts and orders of county boards of equalization, assess property, it is not easy to imagine what powers of assessors and boards of equalization this court had in mind as being free from invasion and usurpation by the judiciary.

The construction placed on the statute providing for appeals from acts and orders of boards of equalization by this court in *First National Bank v. Board of Commrs.*, above cited, violates art. 2 of the Constitution of Idaho, which is as follows:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

That language is too clear to invite or permit interpretation or construction. The assessment of property is a duty belonging exclusively to officers of the executive department of government, and that article of the Constitution, if obeyed, prohibits officers of the judicial department from performing that duty.

In the light of this constitutional provision Idaho Code Annotated, sec. 30–1111, which provides that on appeal from boards of county commissioners "the matter must be heard anew and the act, order or proceeding so appealed from may be affirmed, reversed or modified," adopted by sec. 61–1911 for the government of courts in appeals from acts, orders and proceedings of boards of equalization, must be so construed, when applied to appeals from the last-mentioned boards as to limit the power to modify assessments so that the modification shall not consist of making the assessments anew.

The power of the court is limited by the Constitution to interpreting the law fixing the duties of assessors and boards of equalization, and to directing them to make assessments and equalizations accordingly. The judgment and discretion of courts as to values, for purposes of taxation, cannot be substituted for the judgment and discretion of executive officers designated by the Constitution to assess property and to equalize the assessment thereof.