174 P.2d 936

**NATATORIUM CO. v. BOARD OF COM'RS OF ADA COUNTY.**

No. 7227.

Supreme Court of Idaho.

Oct. 5, 1946.

Rehearing Denied Dec. 30, 1946.

James W. Blaine and Maurice H. Greene, both of Boise, for appellant.

Carey H. Nixon and J. L. Eberle, both of Boise, for respondent.

HOLDEN, Justice.

■ Preliminarily, the motion of respondent and cross-appellant, Natatorium Company, to strike from the record the "memorandum decision" of the trial judge is presented. It appears the "memorandum decision" was included in and made a part of the record on appeal. It is not properly a part of the record. The motion is granted and the "memorandum decision" stricken. Sec. 7-1107, I.C.A.; Williams v. Boise Basin Mining, etc., Co., 11 Idaho 233, 81 P. 646; North Robinson Dean Co. v. Strong, 25 Idaho 721, 730, 139 P. 847; Corker v. Cowen, 30 Idaho 213, 215, 164 P. 85; Baldwin v. Singer Sewing Machine Co., 48 Idaho 596, 598, 284 P. 1027; Clark v. Clark, 58 Idaho 37, 41, 69 P.2d 980; Stearns v. Graves, 61 Idaho 232, 246, 99 P. 2d 955.

Respondent and cross-appellant, Natatorium Company, hereinafter referred to as the Company, for many years has been, and still is, engaged in the business of selling natural hot water for heating residences in Boise. Apparently it is the only concern known to be engaged in the business. Its stock is owned by the Boise Water Corporation whose stock in turn is owned by the General Water, Gas and Electric Company. July 16, 1943, the Company filed written objections to and protest with the Ada County Board of Equalization, protesting the assessment of its properties made by the Assessor of the County for the year 1943. The protest was levelled against the formula used by the Assessor, by which the Assessor arrived at a capitalized value of the properties of $495,000, a physical valuation of $160,921, or a composite value of $327,960, the composite value being reduced one-half, or to $163,980, to make that value, $163,980, conform to the actual value at which other property in Ada county was assessed. On the hearing of the Company's protest, the Board used the same formula as the Assessor, excepting the Assessor had capitalized net income, or net earnings, before taxes, while the Board arrived at valuation (capitalized) after deducting federal income taxes.

August 6, 1943, the Company appealed to the district court from the action and order of the Board, dated July 19, 1943. The appeal from the Board was heard December 14, 1943. Findings of fact and conclusions of law were made and entered June 29, 1944, and on the same day judgment was entered thereon reversing and modifying the order of the Board. September 14, 1944, the Board appealed from the judgment of the district court and thereafter and on the 25th day of September, 1944, the Company also appealed.

It appears from the record, and the court found, property in Ada county for the year 1943 was generally assessed on a basis of fifty per cent. of its value; the court also found the value of the property of the Company at 12:00 M. on the second Monday of January, 1943, for taxation purposes, was $80,460.50; the trial court held the

method of assessment used by the Assessor and the method of equalizing the assessment used by the County Board of Equalization, in assessing the property of the Company for 1943, was illegal; it further held the assessment of the property of the Company for the year 1943, as made by the Assessor, and as equalized by the County Board of Equalization, was arbitrary and capricious. In fixing the value of the property of the Company for taxation purposes at $80,460.50, the trial court refused to and did not consider the factor of the earnings of the Company.

The controlling question presented on these appeals, is: Where, as here, neither the stock, property nor system like that of the Company was every sold on the open market, can the Assessor use a capitalized earning power formula as one factor in determining the cash value of the Company's system for taxing purposes?

The Company, as we understand it, first insists the use of a capitalized earning power formula as one factor in evaluating its property, is an *assessment* of *income,* but, nevertheless, then says "no issue was taken to the principle, of which our statute is declaratory, that earning capacity is a factor in valuation."

We quote pertinent provisions of our "Revenue and Taxation" statute:

Sec. 61-102, I.C.A. "All real and personal property subject to assessment and taxation must be assessed at its full cash value for taxation for state, county, city, town, village, school district and other purposes, under the provisions of this act, with reference to its value at twelve o'clock meridian, on the second Monday of January in the year in which such taxes are levied, * * *."

Sec. 61-111, I.C.A. "Value defined.— By the term 'value,' 'cash value' or 'full cash value' is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power when put to the same uses to which property similarly situated is applied."

Sec. 61-202, I.C.A. "Criteria of value.— In ascertaining the value of any property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion any value or price for which the property would sell at auction or at forced sale, or in the aggregate with all the property in the taxing district; nor, on the other hand, shall he adopt a speculative valuation, or one based upon sales made upon the basis of a small cash payment and instalments payable in the future, but he shall value each article or piece of property by itself and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. * * *."

It will be noted Section 61-102, supra, requires all property must be assessed at its full cash value; that section 61-111, supra, defines "value"; that by the term "value," "cash value," "full cash value," the legislature says, "is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business *taking into consideration its earning power when put to the same uses to which property similarly situated is applied*" (emphasis added); it will be further noted section 61-202, supra, provides that:

"In ascertaining the value of any property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion any value or price for which the property would sell at auction or at forced sale, or in the aggregate with all the property in the taxing district; nor, on the other hand, shall he adopt a speculative valuation, or one based upon sales made upon the basis of a small cash payment and instalments payable in the future, but he shall value each article or piece of property by itself and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made."

█ It follows, in determining the value of property for taxing purposes, the Assessor is prohibited from adopting as a criterion any value for which the property would sell at auction or at forced sale and that he is likewise prohibited from adopting a speculative valuation or one based upon sales on the basis of a small cash payment and instalments payable in the future. Therefore, in determining the value of property for the purpose of taxation, the Assessor must determine either:

(a) Value at which the property would be taken in payment of a just debt due from a solvent debtor, or,

(b) The amount the property would sell for at a voluntary sale made in the ordinary course of business, *taking into consideration earning power.*

Where real property is bought and sold on the open market, the task of the Assessor, in determining its cash value, is made rather easy, but where it is not, may an assessor, in determining the cash value of property, for taxing purposes, consider earning power?

In 3 Cooley, Taxation, 4th Ed., Sec. 1146, p. 2311, the author says:

"The income-producing capacity of property is an important factor in determining its value, although ordinarily not the sole thing for consideration. If the valuation is based principally on earnings, the average earnings and expenses for a series of years, or for such time as is reasonably available, must be considered."

In Adams Express Co. v. Ohio State Auditor, 165 U.S. 194, 225, 17 S.Ct. 305,

310, 41 L.Ed. 683, 697, the Supreme Court, in sustaining a tax on express companies reflecting huge earnings, as compared to a relatively small investment in property, said:

"It will, we think, be conceded that the earning capacity of real estate owned by individuals may be considered in fixing its value for taxation. Take an office building on a prominent street in one of our large cities. It will not be doubted that, by care in the selection of tenants and in the preservation of the reputation of the building, by superior elevator service, by vigilance in guarding and protecting the property, by the exercise of skill and knowledge in the general management of the premises, a good will of the establishment will be promoted, which will tend to an extra increase in the earning capacity and value of the building. For the purpose of taxation, it would be none the less the true value in money of the building because contributed to by the operative causes that gave rise to the good will."

In State ex rel. Attorney General v. Halliday, 61 Ohio St. 352, 379, 56 N.E. 118, 123, 49 L.R.A. 427, a somewhat similar case, in that it involved an assessment of property not sold on the market (because it was protected by a patent), costing but a small amount to produce, but having a very high earning power, the court said:

"That the income-producing capacity of an article is an important factor in determining its value is so obvious as to seem beyond the bounds of controversy. This doctrine was sanctioned in its application to real estate in State v. Jones, Auditor, 51 Ohio St. 492, 513, 37 N.E. 945, and in Adams Express Co. v. Ohio State Auditor, 166 U.S. 220, 17 S.Ct. 604, 41 L.Ed. 965, and no reason is perceived, nor has any been assigned, why a principle so plain and just should not be applied universally to all species of property. This is the first inquiry that a prudent prospective purchaser would make."

We fully agree with the Supreme Court of the United States (Adams Express Co. v. Ohio State Auditor, supra), that the earning capacity of property "may be considered in fixing its value for taxation," and with the Supreme Court of the State of Ohio (State ex rel. Attorney General v. Halliday, supra) "That the income-producing capacity of an article is an important factor in determining its value" ; and, further, that there is no reason "why a principle so plain and just" could not be taken into consideration by the Assessor of this county in determining the cash value of the Company's property for taxing purposes (Sec. 61-111, supra). But nevertheless, the Company contends that cannot be done because it says it is not a public utility, citing in support of that contention, Stoehr v. Natatorium Co., 34 Idaho 217, 200 P. 132. That was a special proceeding for a writ of mandate to *compel* the Company to furnish Stoehr natural hot water for heating his dwelling in Boise. The

controversy was decided upon a stipulation of facts, the court holding, under such stipulation of facts, the Company was not a public utility, therefore, could not be *compelled* to supply hot water service. The question was not presented either directly or indirectly, or in any manner whatsoever, as to whether an assessor could, or could not, take earning power into consideration in determining the cash value of property for the purpose of taxation. In fact, no tax question whatever was presented for decision; it was not a tax case. It, therefore, does not support the Company's contention, that earning power cannot be taken into consideration in determining the value of its system for taxing purposes.

While it is true the Company is not such a public utility as to impose upon it a duty to furnish hot water heating service to an applicant, or applicants, therefor, as held in the Stoehr case, to which we adhere, that does not mean the Assessor cannot take earning power into consideration in determining the value of the Company's property for taxing purposes, because the statute so expressly provides. To hold the Assessor could not do that would amount to annulling the provision of the statute (sec. 61-111, supra) authorizing him to do so. It follows that where, as here, neither stock nor system like that of the Company was ever sold on the open market, the Assessor can use, as he did, a capitalized earning power formula as one factor in determining the cash value of the Company's system for taxing purposes.

Consequently, the trial court erred in holding the assessment of the property of the Company for the year 1943, as made by the Assessor, and as equalized by the County Board of Equalization, was arbitrary and capricious, and in holding the Assessor could not use a capitalized earning power formula as one factor in determining the cash value of the Company's system for taxing purposes. For the reasons above stated, thé assessment made by the Assessor, as corrected and equalized by the Board, must stand: Having reached that conclusion, it is unnecessary to either discuss or consider any other question argued or contention made by either appellant or respondent.

The judgment of the trial court is, therefore, reversed and the cause remanded with directions to enter judgment in accordance with the views herein expressed. No costs awarded.

AILSHIE, C. J., MILLER, J., and BUCKNER, District Judge, concur.

BUDGE and GIVENS, JJ., did not sit at the hearing or participate in this decision.

SUTPHEN, District Judge (concurring in part and dissenting in part).

I concur with what Justice HOLDEN has said leading up to this court's conclusion, that the trial court erred in holding

that the assessor could not use a capitalized earning power formula as one of the factors in determining the cash value of the Company's property, but I wish to dissent from this court's determination, that "the assessment made by the Assessor, as corrected and equalized by the Board, must stand."

There are errors in the assessment roll as equalized by the Board, and I am of the opinion that the case should be remanded to the trial court with instructions to correct such errors.

The Company's property, aside from its so-called "plunge properties," the valuation of which does not appear to be in dispute, consists of the 10 acres of land which is the source of the Company's natural hot water supply, three hot water wells drilled thereon, a tank and meter house, certain pumps and electrical pumping equipment and water mains and service connections constituting a system for the distribution of hot water to its customers in the City of Boise.

The assessment roll as equalized by the Board assesses the 10 acres of land at $625 and then simply, under the heading "personal property," makes an assessment of $45,613, in District No. 1 and $74,422 in District No. 1 and Boise City.

The assessment roll for the year 1943 increases the valuation of the Company's property $96,835 over the valuation for the years 1939 to 1942, inclusive, and all of such increase is added to valuations under the classification "Personal Property," making a total valuation under this classification of $120,035, 62% being allocated as within the city. The evidence does not justify such valuation on this class of property, nor does it appear that the Company's property in the City of Boise, exclusive of its plunge properties, can properly be assessed at the figures mentioned.

Our statute (Sec. 61-202, I.C.A.), as stated by Justice HOLDEN, requires each piece of property to be valued by itself. No attempt to comply with such requirement appears to have been made. I am of the opinion that the valuation of the Company's investment for wells, pumping equipment, and improvements upon the land, as well as in its distribution system, can be determined under the evidence without the aid of an equalization of income formula; and that this should be done and such property classified and assessed on the assessment rolls as other similar investments in going concerns are usually classified and assessed in Ada county.

The land, however, has certain peculiar characteristics differing from all other lands in Ada county or elsewhere, as far as known, and it is capable of furnishing a supply of natural hot water and is so situated as to make such hot water economically available for use in the City of Boise. Because of these peculiar characteristics and our inability to ascertain in the ordinary manner the market value of property containing these characteristics, I am con-

vinced a capitalization of that portion of the Company's income which can properly be found due to such land may be used as one of the factors for the determination of its cash value for assessment purposes. It is readily apparent that the $625 valuation placed on the land by the assessor and the Board of Equalization is inadequate.