215 P.2d 815

**ANDERSON'S RED & WHITE STORE et al.
v. KOOTENAI COUNTY.**

No. 7551.

Supreme Court of Idaho.

March 8, 1950.

Robert E. Smylie, Atty. Gen., J. N. Leggat, Asst. Atty. Gen., C. J. Hamilton, Pros. Atty., Coeur d'Alene, James W. Wayne, Coeur d'Alene, for respondent.

Elder, Elder & Smith, Coeur d'Alene, for appellants.

262

TAYLOR, Justice.

One hundred sixty-five merchants in Kootenai County complained to the county commissioners, sitting as a board of equalization, regarding the assessment of their respective stocks of merchandise for the year 1948, and made application for a reduction in their assessments. All the complaints are the same as to the ground urged for relief. They charge that the assessor fixed the assessed value of the stocks of merchandise at 20% of their respective actual cash value, and assessed all other property in the county at 10% of its actual cash value, and that in so doing the assessor discriminated against complainants.

The Board of Equalization refused to alter the assessments, and the complainants appealed to the district court. After a trial of the issues the court found as follows:

"Findings of Fact.

"I. That the assessed valuation of appellants' stocks in trade, goods and merchandise are not excessive and are not out of proportion to the assessed valuation of other property in Kootenai County.

"II. That the Assessor of Kootenai County did intentionally assess all stocks of merchandise as classified by him at 20% of actual cash value, said actual cash value being the amount shown by appellants on the returns prescribed by Section 61-1108, Idaho Code Annotated, as amended by Section 9, Chapter 93, Session Laws of 1947. (Section 63-1207, I.C.)

"III. That the Assessor of Kootenai County did not intentionally and systematically assess all property in Kootenai County, other than merchandise, on the basis of 10% of its actual cash value.

"IV. That the Assessor of Kootenai County did not discriminate against the appellants or any of them."

On these findings the district court denied relief and the case is brought here. Appellants assign as error findings one, three, and four, and that the court erred in not finding "as to what percentage of the full cash value other property in Kootenai County was assessed for the year 1948."

The constitution of this state so far as applicable here provides:

"The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property except as in this article hereinafter otherwise provided. * * *." Art. 7, sec. 2.

"All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and

shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: * * *." Art. 7, sec. 5.

These restrictive provisions do not apply to license or excise taxes. In re Kessler, 26 Idaho 764, 146 P. 113, L.R.A.1915D, 322, Ann.Cas.1917A, 228; Diefendorf v. Gallet, 51 Idaho 619, 10 P.2d 307; J. C. Penney Co. v. Diefendorf, 54 Idaho 374, 32 P.2d 784; United Pac. Ins. Co. v. Bakes, 57 Idaho 537, 67 P.2d 1024; John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359. These decisions recognize the authority of the legislature, to make reasonable classifications of property for purposes of taxation to exempt property from taxation, and even to discriminate between classes of property or business, Diefendorf v. Gallet, supra; J. C. Penny Co. v. Diefendorf, supra; provided that the legislative intent appears, and that all within the same class receive the same treatment. It is noted also that, in the above cases, the court was dealing with license or excise taxes.

The assessments involved here are for ad valorem "property" tax purposes, and are therefore required to be made uniform with, and upon the same basis of valuation as, other property in the county.

The county does not contend that the legislature, by the provisions of sec. 63-1207, I.C., attempted or intended to discriminate against appellants, by classification or otherwise. Its defense against the claim of discrimination appears to rest upon the presumption that the assessor and board of equalization performed their duties according to law. Since it does appear on the face of the record that merchandise was assessed on the basis of 20% and other property on the basis of approximately 10% of actual value, applying the presumption to the facts, respondent urges that it is to be presumed that the assessor considered the superior "earning power" of the stocks of merchandise, as required by section 63-111, I.C. The record is meager as to comparative earning power. On cross-examination of some of appellants' witnesses it was said that residence property would earn about 9% of its value. Only one of the merchants, a hardware dealer, testified. His testimony was to the effect that such merchandise would earn from 9 to 12% of its value. Earnings of other types of merchandise and of other kinds of real or personal property in the county were not examined. However, from finding II it appears that earning power was not considered. The deputy assessor called by appellants testified that the assessor, Mr. Thomas, "decided to assess at twenty per cent, the merchandise at twenty per cent."

The assessor may and should consider the earning power, and all other factors, known or available to his knowledge, which affect the value of the property assessed, to the end that the property

of each taxpayer will bear its just proportion of the burden of taxation. Const. Art. 7, sections 2 and 5; sections 63-111, 63-202, I.C.; Natatorium Co. v. Board of Commissioners, 67 Idaho 143, 174 P.2d 936; City and County of Denver v. Lewin, 106 Colo. 331, 105 P.2d 854; McClelland v. Board of Supervisors, 30 Cal.2d 124, 180 P.2d 676; Rittersbacher v. Board of Supervisors, 220 Cal. 535, 32 P.2d 135; State ex rel. Attorney General v. Halliday, 61 Ohio St. 352, 56 N.E. 118, 49 L.R.A. 427.

The county rested its case without offering any evidence. It is not intended to infer that the county had the burden of sustaining the assessments. On the contrary, the above stated presumption is valid and is to be liberally applied. We also adhere to the rule that evidence to overcome the presumption must be clear and convincing. In re Winton Lumber Co., 53 Idaho 539, 26 P.2d 124; Colorado Tax Commission v. Midland Terminal Railway Co., 93 Colo. 108, 24 P.2d 745; Ozette Railway Co. v. Grays Harbor County, 16 Wash.2d 459, 133 P.2d 983. But when prima facie case of discrimination is established, then the assessments must be supported.

While the courts will not attempt to correct mere mistakes or errors of judgment on the part of the assessor or board of equalization, where intentional, systematic discrimination occurs, either through undervaluation or through overvaluation of one property or class of property as compared to other property in the county, the courts will grant relief. Northern Pac. Ry. Co. v. Clearwater County, 26 Idaho 455, 144 P. 1; Washington County v. First National Bank, 35 Idaho 438, 206 P. 1054; McGoldrick Lbr. Co. v. Benewah County, 54 Idaho 704, 35 P.2d 659; Cummings v. National Bank, 101 U.S. 153, 25 L.Ed. 903; Washington Water Power Co. v. Kootenai County, 8 Cir., 270 F. 369; Greene v. Louisville & I. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas. 1917E, 88; Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979; annotations, 3 A.L.R. 1370; 28 A.L.R. 983; 55 A.L.R. 503; Cromwell v. Hillsborough Tp., 3 Cir., 149 F.2d 617; section 31-1512, I.C.

A considerable volume of evidence was presented by appellants to support the claim that all other property in the county was systematically assessed at 10% of actual cash value. Current cash sales and mortgage values were compared with assessed values, and men experienced in real estate sales, loans and appraisals in the county testified that the 1948 assessed values were approximately 10% of actual current sales values. From a comparison drawn between notations of actual sales and mortgage loans appearing on the assessor's office copies of taxpayers' statements, and the assessed values of the same properties, it appears some parcels were assessed above and some below 10% of the sale price or loan noted, the average being

10.47%. Another tabulation was made of so-called "G. I." mortgage loans comparing the assessed value to the amount of the loan. Again some of the assessments were below, and some above, 10% of the loan. The average was 9.85%. As to personal property, other than merchandise, the evidence is to the effect that it was assessed at or below 10% of actual value. It is apparent that the assessor did not in all instances assess at 10% of the other values used for comparison. What percentage factor, of the actual current value or what other method, was used by the assessor in arriving at assessed value does not appear.

We have a number of statutory provisions intended to guide and direct the assessor in making assessments. Those which may be considered directly involved here are: Secs. 63-102, 63-111, 63-202, 63-1203, 63-1206, and 63-1207, I.C. These statutes indicate that, for ad valorem taxation, all property is to be assessed at its "full cash value" as of the date of the assessment. Property which is bought and sold for cash on the current market has a market value, which, as to such property, becomes the dominant factor in its valuation. Secs. 63-111 and 63-202, I.C. As to property which has no current market, other factors (such as earning power, replacement cost less depreciation, or consensus of opinion of taxpayers, Sec. 63-202, I.C.) become the more important. But after having considered all of the relevant factors affecting the value of the different classes and items of property, and having arrived at the current value, if the result is not entered as the assessed value, and the assessor decides that the "full cash value" contemplated by statute is less than the value so arrived at, he must assess all property at the same proportion of its market or other actual current value. In this case the record is to the effect that the stocks of merchandise were returned at what it would cost to replace them in the wholesale market. Without other evidence to limit or qualify its effect, this would mean that the returns revealed the current market value of the stocks. Without explanation the assessments were fixed at 20% of this value, while according to the testimony of those who qualified as experts other property was assessed at 10% of current market values. If this disparity is not reasonably justified, then the constitutional requirement of uniformity has been violated.

Individual irregularities and inequality in taxation will always exist. It is a process which cannot be reduced to an exact science. The law does not require exactitude, but it does require uniformity.

The trial court did not determine upon what relative basis property, other than merchandise, was assessed. This finding is essential to a determination of the ultimate question of discrimination and the extent thereof. Accordingly, the judgment is reversed and the cause remanded

with directions to the court to find upon what relative basis other property in the county was assessed, and, if found to be systematically undervalued as compared to appellants' property, or if appellants' property is found to be systematically overvalued, compared to the other property, to reduce appellants' assessments by such amounts as will equalize them with the assessments on other property, or as nearly so as the evidence will permit. The court may open the case for further proof if deemed advisable. McGoldrick Lbr. Co. v. Benewah County, and Washington County v. First National Bank, supra.

Costs awarded to appellants.

HOLDEN, C. J., and GIVENS, PORTER, and KEETON, JJ., concur.