256 P.2d 526

Appeal of SEARS, ROEBUCK & CO.
BOARD OF COUNTY COM'RS OF ADA COUNTY v. SEARS, ROEBUCK & CO.
No. 7879.

Supreme Court of Idaho.
April 22, 1953.

Robert E. Smylie, Atty. Gen., J. N. Leggat, Asst. Atty. Gen., Blaine Evans, Pros. Atty., and Maurice H. Greene, Boise, for appellant.

Moffatt & O'Leary, Boise, for respondent.

PORTER, Chief Justice.

The Assessor of Ada County assessed the stock of merchandise of respondent for the year 1950 in the sum of $178,350. Respondent protested and requested reduction of such assessment before the Board of Equalization of Ada County and contended that such assessment should not exceed $115,180. The Board of Equalization entered an order denying such protest and request for reduction, and sustaining and approving the assessment made by the county assessor.

Respondent appealed from the order of the County Board of Equalization to the State Tax Commission. The matter having been presented to the tax commission, it made an order affirming the order of the Board of Equalization of Ada County.

Respondent, under the provisions of Section 63–2214, I.C., appealed to the District Court of Ada County from the order of the State Tax Commission. A trial de novo was had in the district court and resulted in a judgment modifying the order of the State Tax Commission and reducing the assessment of the stock in trade of respondent for the year 1950 from $178,350 to $115,180. The judgment also directed the Tax Collector of Ada County to refund the excess taxes paid under protest by respondent. From such judgment appellant has appealed to this court.

Appellant, under its specifications of error, contends that the evidence is insufficient to support the following summarized findings of the court:

(1) That the assessor arrived at his assessment of respondent's stock in trade by measuring the floor space occupied by respondent in operating its business and comparing such floor space with the space occupied by other

merchants; and by walking through respondent's store several times and looking at the merchandise on dates after the first three months of the year 1950; and that the assessor did not consider any other factor in making the assessment.

(2) That the assessor did not make any determination of the average value of respondent's stock in trade during the first three months of the year 1950.

(3) That the average value of respondent's stock in trade for the first three months of 1950 was $178,350 and the equalized value was $115,180.

Appellant further contends that the court erred in concluding, (a) that the assessment made by the assessor of respondent's stock in trade for the year 1950 was arbitrary, capricious and erroneous; and (b) that the stock in trade of respondent was not assessed equally in comparison to the stock in trade of other merchants in Ada County.

We will not consider the contentions of appellant separately as the answers to such contentions will appear in our discussion of the case as a whole.

Section 63-111, I.C., is the general statute defining the term "value" as used in our assessment statutes. Such section reads as follows:

"By the term 'value,' 'cash value' or 'full cash value' is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power when put to the same uses to which property similarly situated is applied."

Section 63-202, I.C., recites additional criteria for determining value. It reads in part as follows:

"In ascertaining the value of any property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion any value or price for which the property would sell at auction or at forced sale, or in the aggregate with all the property in the taxing district; nor, on the other hand, shall he adopt a speculative valuation, or one based upon sales made upon the basis of a small cash payment and instalments payable in the future, but he shall value each article or piece of property by itself and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made."

In the year 1950, Section 63-1207, I.C., since repealed, was in force and effect. Such section provided a special procedure for determining the value for assess-

ment of the stock in trade of merchants. It read in part as follows:

"The stock in trade of any merchant shall be assessed upon the basis of its average value during the first three months of the year in which the taxes are levied or, if the merchant commences business during said three months' period, then the average value of the stock in trade during the remainder of said three months' period, and if a merchant commences business after the expiration of said three months' period he shall be assessed upon the basis of the value at the time the assessment is made.

"Every merchant shall prepare a return in duplicate setting forth the total valuation of all stock of goods, wares and merchandise in his possession, and deliver the same to the county assessor of the county in which said property is situated upon request of such county assessor. Such return shall bear the affidavit or affirmation of the merchant that the statements contained therein are true and correct. Any merchant who shall fail, refuse or neglect to deliver such inventory return to said assessor as required shall be guilty of a misdemeanor."

Under the provisions of Section 63–1207, I.C., the Assessor of Ada County for the year 1950, sent to the merchants in such county for completion and return state-ments of valuation of personal property. Respondent completed and returned to such assessor its statement of valuation containing the following information:

"Total valuation of merchandise reported to Idaho Income Tax Dept. and U. S. Dept. of Internal Revenue for the last fiscal year...................$300030

"Total Valuation of Merchandise on hand, Feb. 1, 194...............$270442

"Total Valuation of Merchandise on hand, Mar. 1, 194...............$293377"

The evidence at the trial disclosed that the physical inventory of respondent's stock in trade was taken on January 31, 1950, and revealed a total value in the sum of $270,442. The inventory value for December 31, 1949, of $300,030 was computed by adding the cost of sales and subtracting the purchases made during the month of January, 1950. The inventory value for March 1, 1950, in the sum of $293,377 was computed by the reverse method. The average valuation of respondent's stock in trade for the first three months of the year 1950 as shown by such inventories is the sum of $287,950. It is admitted that merchandise in Ada County is assessed by the assessor at 40% of its valuation. Forty percent of $287,-950 is the sum of $115,180, being the proper amount of valuation for assessment found by the trial court.

The Assessor of Ada County assessed the stock in trade of respondent at $178,350

after having applied the equalization factor of 40% to the valuation of such stock in trade. How the assessor arrived at his valuation of the stock in trade of respondent is not too clear from his testimony. He testified that he accepted the statements of valuation received from some merchants but that other statements were not accepted. That where the statements of valuation were accepted, the three values reported were added together, divided by three and 40% thereof taken as the valuation for assessment. He further testified that he and a deputy went through the store of respondent on several occasions after the first three months of 1950 and compared the respondent's stock of merchandise with the stock of merchandise of other similar stores; and that they measured the floor space occupied by respondent and compared it with the floor space occupied by several other merchants. Under persistent questioning by counsel and by the court, the assessor testified as follows:

"Q. What method did you use to arrive at an average for the three months? A. Well, as stated before we made a comparison between the stores and then we further compared the number of square feet of similar space occupied by concerns carrying similar stocks.

*   *   *   *   *   *

"The Court: I don't think my question has been answered. I want to know how this figure of $178,000 was derived.

"By Mr. Leggat: Q. How did you arrive at the $178,000 figure? A. Well, by comparison between the stores, both by looking over the stock and by taking the number of square feet which is occupied by each of these concerns which I have mentioned.

*   *   *   *   *   *

"The Court: I am trying to figure out how just by viewing the premises and the square footage how $178,000 came up as a result of that.

"By Mr. Leggat: Q. I notice on this Exhibit 4 you show, for instance, Cash Bazar, that the assessment against them works out at $3 a square foot as against $1.79 for Sears-Roebuck; I think the court would be interested in knowing how you arrived at that difference? A. Cash Bazar is one of the heaviest merchandising stores in the city, both in the warehouse—per square foot—as well as the main floor of the retail part."

There was put in evidence by stipulation a table showing the respective sums per square foot for which seven representative retail stores of Ada County were assessed for the year 1950. Such sums were obtained by dividing the square footage area occupied by each of such stores into the assessed valuation made by the

assessor of the merchandise of such store. The factors thus obtained range from $1.70 per square foot to $3 per square foot. The factor shown for respondent is $1.79 per square foot. The record does not disclose whether the assessed valuations were based upon the statements of valuation furnished by the taxpayers or otherwise determined. Nor does the evidence definitely disclose whether the assessor took the factor of $1.79 and multiplied the number of square feet occupied by respondent to obtain the assessed valuation of respondent's stock in trade; or whether the assessor by some other method fixed the assessed valuation and the division of such valuation by the number of square feet occupied by respondent results in the factor of $1.79 per square foot.

There is no challenge in the evidence to the accuracy of the inventory valuations furnished by respondent. The valuations shown represent the cost of such merchandise to respondent. Respondent uses the first-in-first-out method of bookkeeping which method tends to keep inventoried costs at current market value. That appellant does not challenge the correctness of the cost of the merchandise in question as shown by respondent's statement is indicated on page 37 of appellant's brief wherein it is said:

"If 'value' as defined in Sec. 63–111, Idaho Code means solely cost of a stock of merchandise to a store, then appellant concedes that the assessor did not follow the statute and arrived at a valuation in excess of cost."

In Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, at page 265, 215 P.2d 815, at page 818, we discussed the duty of an assessor in the assessment of stocks of merchandise as follows:

"We have a number of statutory provisions intended to guide and direct the assessor in making assessments. Those which may be considered directly involved here are: Secs. 63–102, 63–111, 63–202, 63–1203, 63–1206, and 63–1207, I.C. These statutes indicate that, for ad valorem taxation, all property is to be assessed at its 'full cash value' as of the date of the assessment. Property which is bought and sold for cash on the current market has a market value, which, as to such property, becomes the dominant factor in its valuation. Secs. 63–111 and 63–202, I.C. As to property which has no current market, other factors (such as earning power, replacement cost less depreciation, or consensus of opinion of taxpayers, Sec. 63–202, I.C.) become the more important. * * *

"In this case the record is to the effect that the stocks of merchandise were returned at what it would cost to replace them in the wholesale market. Without other evidence to limit

or qualify its effect, this would mean that the returns revealed the current market value of the stocks."

The cost of respondent's merchandise as shown by its return to the assessor represents what it would cost to replace such merchandise in the wholesale market at a voluntary purchase and sale made in the ordinary course of business. There is no evidence in the record limiting or qualifying the cost of the merchandise as a true representation of its actual value. The record does not show that the assessor used any factor of earning power, favored buying position or increased value of merchandise to enhance the value of the stock in trade above its cost at wholesale. Nor does appellant contend that the retail selling price of such merchandise represents its value. Apparently, the action of the assessor would indicate he thought there was more merchandise on hand than accounted for by the inventory. He did not find the value of the merchandise was the wholesale cost increased by any definite factor.

■ While "cost" and "value" are not necessarily synonymous terms under Section 63–111, I.C., cost of merchandise on the open wholesale market is prima facie evidence of value. Anderson's Red & White Store v. Kootenai County, supra; Natatorium Co. v. Board of Com'rs of Ada County, 67 Idaho 143, 174 P.2d 936. Such prima facie evidence of value may be overcome by evidence that such merchandise is in fact of greater value. And it may be conceded as contended by appellant, that an assessor may use any appropriate, helpful criterion which may serve as a guide in determining the value of property. Washington County v. First Nat. Bank, 35 Idaho 438, 206 P. 1054; In re Winton Lumber Co., 53 Idaho 539, 26 P.2d 124; Washington Water Power Co., v. Kootenai County, 9 Cir., 270 F. 369.

■ A court will not attempt to correct mere mistakes or errors of judgment on the part of an assessor. Humbird Lumber Co. v. Thompson, 11 Idaho 614, 83 P. 941; Washington County v. First Nat. Bank, supra; Oregon Short Line R. Co. v. Ross, D.C., 52 F.2d 695; Johnson v. Johnson, 92 Mont. 512, 15 P.2d 842. On the other hand, the court will grant relief where the valuation fixed by the assessor is manifestly excessive, fraudulent or oppressive; or arbitrary, capricious and erroneous resulting in discrimination against the taxpayer. Natatorium Co. v. Board of Com'rs of Ada County, supra; McGoldrick Lbr. Co. v. Benewah Co., 54 Idaho 704, 35 P.2d 659; Phillips v. Board of Com'rs, 83 Colo. 82, 262 P. 523. See also, Chastain's Inc. v. State Tax Commission, 72 Idaho 344, 241 P.2d 167; Utah Oil Refining Co. v. Hendrix, 72 Idaho 407, 242 P.2d 124.

■ The value of property for purposes of taxation as determined by the assessor is presumed to be correct; and the burden of proof is upon the taxpayer to show

by clear and convincing evidence that he is entitled to the relief claimed. Washington County v. First Nat. Bank, supra; Phillips v. Board of Com'rs, supra; 51 Am.Jur., Taxation, Sec. 655, p. 620.

In the instant case respondent made a prima facie showing of the average value of its stock of merchandise during the first three months of the year 1950 by showing the cost thereof. The assessor in assessing such property did not attempt to raise such valuation on the theory that such cost did not represent true value. He ignored the taxpayer's sworn statement of value and adopted an exclusive, arbitrary and capricious method of arriving at value by measuring the square feet of floor space occupied by such stock of merchandise and comparing the same to the floor space occupied by other mercantile establishments. Such method of determining value could not overcome respondent's prima facie showing of value. The resulting assessment was erroneous and excessive.

In State ex rel. Beloit Iron Works v. City of Beloit, 257 Wis. 422, 43 N.W.2d 473, the assessor was not satisfied with the taxpayer's statement. The inventory figure looked so ridiculously low that in the opinion of the assessor it was not possible for the taxpayer to operate and do the volume of business it was doing on the inventory supplied. The assessor materially increased the assessed valuation of the stock in trade but there was no showing that the inventory supplied did not correctly reflect the merchandise on hand and the cost or market value thereof. The court said, 43 N.W.2d on page 475–476:

"The opinion even of a very highly qualified assessor in the earnest discharge of his duty cannot be the substitute for actual figures, nor can it place things in an inventory which do not belong there.

\* \* \* \* \* \*

"When the quantity of personal property on hand May. 1 is established, together with its value, the problem is solved and is not subject to change by theory or arbitrary method. It appearing from all the evidence introduced that the inventory was as claimed by the appellant, the method resorted to by the assessor resulted in an excessive assessment, and the board of review exceeded its jurisdiction by affirming."

Appellant's position that the court erred in making the findings of fact and conclusions of law questioned by the specifications of error, is untenable. The judgment of the trial court is affirmed. Costs awarded to respondent.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.