391 P.2d 840

### BOISE COMMUNITY HOTEL, INC., Plaintiff-Appellant,

v.

### BOARD OF EQUALIZATION, ADA COUNTY, State of Idaho, Defendant-Respondent.

### CASCADE EQUIPMENT CORPORATION, Plaintiff-Appellant,

v.

### BOARD OF EQUALIZATION, ADA COUNTY, State of Idaho, Defendant-Respondent.

Nos. 9271, 9272.

Supreme Court of Idaho.

April 24, 1964.

Richards, Haga & Eberle, Boise, for appellants.

Allan G. Shepard, Atty. Gen., and J. N. Leggat, Boise, for respondent.

TAYLOR, Justice.

Each of the plaintiffs (appellants) in separate proceedings petitioned the board of equalization of Ada county for a reduction in the value placed upon their respective properties for tax purposes by the assessor of Ada county for the year 1958. The petitions were denied by the board of equalization and the parties appealed to the state tax commission, and that commission, after hearings, affirmed the orders of the county board of equalization. The plaintiffs then appealed to the district court, where their causes were consolidated for trial. The plaintiffs brought these appeals from the judgments of the district court affirming the orders of the state tax commission.

Plaintiff, Boise Community Hotel, Inc., was, at all times pertinent hereto, the owner of Lot 1 and the W½ of Lot 2, Block 53, of Boise City Original Townsite, in Ada county. The land was occupied by a building designed and used as a garage and service station for servicing, repairing and storing of automobiles, and containing a 21 x 39 foot office room. The building, a one-story, concrete structure, occupied the entire surface of the one-and-one-half lots, and was located on the corner of Bannock and 9th streets, having a frontage of 75 feet on Bannock street. For the year 1958 the assessor fixed the value of the property for tax purposes at $13,554 for the land, and $6,035 for the building. The plaintiff, Boise Community Hotel, Inc., acquired the property in 1955 for a consideration of $75,000.

The Phoenix Corporation was the owner of Lots 11 and 12, Block 11, of the Boise City Original Townsite, in Ada county. These lots were occupied by a four-story, concrete, brick veneer office building, known as the Sun Building. In 1961, the plaintiff, Cascade Equipment Corporation, purchased the entire capital stock of the Phoenix Corporation, after offset of liabilities, for a consideration of $263,000. The property involved was the only asset of the Phoenix Corporation. For the tax year 1958 the assessor fixed the value of the property for tax purposes at $24,390 for the land and $62,570 for the building. The building oc-

cupied the entire surface of the two lots, located at the corner of 10th and Main streets, with a frontage of 100 feet on Main street.

In support of their contention that their properties were overvalued by the assessor, the plaintiffs by their assignments of error contend that the assessor did not pursue a proper or lawful method of fixing the assessed values because he did not determine the "full cash value" of the properties; and that the values assessed by him were higher than, and not uniform with, the assessed values fixed upon other property in the county, and that the assessments against plaintiffs' properties were, therefore, discriminatory.

"The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. * * *" Const., art. 7, § 2.

"All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: * *." Const., art. 7, § 5.

"All real and personal property subject to assessment and taxation must be assessed at its full cash value for taxation * * *." I.C. § 63–102.

"By the term 'value,' 'cash value' or 'full cash value' is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power when put to the same uses to which property similarly situated is applied." I.C. § 63–111.

"In ascertaining the value of any property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation * * *." I.C. § 63–202.

The assessor is required to classify lands within his county (I.C. § 63–316) in accord with classes provided by the legislature (I.C. § 63–315). The plaintiffs' properties were properly. classified as "business lots." The method employed by the assessor, the criteria factors and guides, used and considered by him in determining the assessed value of these properties, were the same as those employed and considered in assessing all other business property in Boise. The lands or lots were assessed separate and apart from the buildings or improvements thereon.

In assessing the business lots the assessor established what he termed a "key corner," or center of the downtown business district, at which he determined land values to be highest. At that intersection he assessed the corner lots at the highest value of any lots in the business classification, i. e., $428 per front foot.

Radiating out in all directions from the "key corner," the assessor fixed the assessed values of business lots on a sliding scale in relation to their distance from the key corner; that is, the farther from the key corner the lower were the assessed values, except that "corner" lots were assessed at a higher value than "inside" lots. These assessed values were lowered by the assessor on at least two occasions during the years preceding the assessments here involved, as the result of what the assessor determined to be a decrease in land values in the business district caused by the establishment of outlying shopping centers and a resultant decrease in pedestrian traffic in the downtown business area. In making these reductions in values in the downtown district, the assessor was also guided by the advice and opinions of a group of real estate appraisers and dealers, which he convened and consulted in regard thereto.

The assessor testified that he also noted and considered valuations as revealed by sales, occasionally occurring, of properties in the business district; and that such sales were relatively infrequent. However, in a deposition taken April 25, 1960, the assessor testified that his valuation was not based upon the standard of what the land would bring at a voluntary sale. His testimony was in part as follows:

"Q Then I take it in arriving at the value of $428 that is what you consider to be the price that that property would sell for at a voluntary sale on a front foot?

"A No, not at all.

"Q What is your criteria of arriving at the $428 per front foot?

"Q Well, it is just our judgment that valuation is comparable and then you have uniformity."

Before the state tax commission, the assessor testified:

"Mr. Eberle: * * * You haven't used any cash value in your assessment of this property, that is the cash value of a free seller and a free buyer?

"Mr. Leonardson: No."

In assessing buildings and improvements the assessor determined the replacement cost based upon the average cost of labor and materials during the years 1938 to 1941, allowing for depreciation according to the age of the building and the character and quality of construction, and, where deemed appropriate, allowing deductions for obsolescense. The reconstruction cost

was determined in the case of one-story structures on the basis of the number of square feet of floor space and in the case of multiple stories upon the basis of cubic feet of enclosed space, along with the type and quality of materials, fixtures and equipment installed. The assessor also testified that, when available, he used and considered the earning power of the structure, capitalized at 6%. In such case the capitalized earnings value and the replacement value, less depreciation, were added together and divided by two. After having determined the value of the improvements in the foregoing manner, the assessor fixed the assessed value thereof at 40% of the value thus determined. However, when the assessor was asked whether his valuation figure represented a percentage of current market value, he responded as follows:

"We don't attempt to arrive at the valuation for present day, all we are trying to do is keep property equitably assessed and we are using the guide as to the labor and cost for 1938–1941 prices."

Later in the same deposition proceeding the assessor was asked whether he knew the market value of the Boise Community Hotel property at the time of its assessment in 1958. He answered "I don't know." And before the tax commission he testified as follows:

"Mr. Eberle: I still come back to the same question of using this formula what value do you arrive at for this particular property?

"Mr. Leonardson: Well, we arrive at a value. To say market value is another thing. We arrive at the value that we say is fair and equitable. We are not saying what it cost, we are saying that the valuation that we have established is fair and equitable as compared to other property of like nature.

"Mr. Eberle: Mr. Leonardson may I ask you a question or two. Do you have an opinion as to the cash value between a willing buyer and a willing seller of the value of the Sun Building for assessment purposes?

"Mr. Leonardson: No."

The plaintiff, Boise Community Hotel, Inc., produced testimony to the effect that its property had decreased in value and was not worth to exceed $60,000. The Cascade Equipment Corporation produced testimony to the effect that its property was not worth to exceed $250,000. Further, plaintiffs stress that property in Ada county is assessed on the average of either 20% of current market value (findings of assessor) or 15.817% of current market value (findings of the state tax commission); that if these percentages are applied to the assessed valuation of their property the following result is obtained.

Garage property. Land assessed at $13,-554 equals 20% of $67,770 market value; improvements assessed at $6,035 equals 20% of $30,175 market value; total market value $97,945. On the basis of 15.817%, the total market value would be $123,802.

Sun property. Land assessed at $24,390 equals 20% of $121,950 market value; improvements assessed at $62,570 equals 20% of $312,850 market value; total market value $434,800. On the basis of 15.817%, the total market value would be $549,587.

■ This court has consistently held that the only criterion for determining value of property for ad valorem taxation is full cash or market value. C. C. Anderson Stores Company v. State Tax Com'n, 86 Idaho 249, 384 P.2d 677; Appeal of Sears, Roebuck & Co., 74 Idaho 39, 256 P.2d 526; Natatorium Co. v. Board of Com'rs of Ada County, 67 Idaho 143, 147, 174 P.2d 936; McGoldrick Lumber Co. v. Benewah County, 54 Idaho 704, 35 P.2d 659; In re Winton Lumber Co., 53 Idaho 539, 26 P.2d 124; First Nat'l Bank v. Washington County, 17 Idaho 306, 105 P. 1053.

■ Defendant contends that even if its assessment methods are erroneous, those methods were uniformly erroneous in that the same standards used in assessing plaintiffs' property were used in assessing other properties so that, "right or wrong," a practical uniformity has resulted. In the appeal of C. C. Anderson Stores Company, supra, this court found ad valorem taxes on store merchandise were computed solely by using a formula based on the square footage of the building. The formula did not take into consideration factors of depreciation or obsolescense. We expressly recognize there was no evidence to establish that the assessor had valued the merchandise of other owners in any manner different from the complaining taxpayer. Nevertheless, we held the assessment erroneous because it did not reflect any attempt to ascertain the actual full cash value of the merchandise as defined by statute. In the appeal of Sears, Roebuck & Co., supra, the assessor testified (74 Idaho at 44, 256 P.2d at 529) that he computed the assessed value of merchandise by employing the following formula: "[W]e made a comparison between the stores and then we further compared the number of square feet of similar space occupied by concerns carrying similar stocks." This court held the assessment method erroneous because it did not constitute an attempt to obtain the true value of the merchandise.

The law as applied in these decisions requires the assessor to adhere to the statutory standard of full cash value. He may not adopt another standard of value, even though it be applied uniformly in the taxing unit. I.C. § 63-202.

Defendant contends that if plaintiffs' "properties have been overassessed, then so have all other properties and appellants [plaintiffs] are not assuming any tax burden greater than are like taxpayers."

In Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, 263, 215 P.2d 815, 816, we said ▸

"These decisions recognize the authority of the legislature, to make reasonable classifications of property for purposes of taxation to exempt property from taxation, and even to discriminate between classes of property or business, * * * provided that the *legislative intent* appears, and that all within the same class receive the same treatment." (Emphasis supplied.)

██ In reviewing our statutes we find no legislation authorizing the assessment of business property at a higher percentage of market value than other property in the county. This court has held that where intentional, systematic discrimination occurs, either through undervaluation or overvaluation of one property or class of property as compared to other property, relief will be granted.

In Washington County v. First Nat'l Bank (1922), 35 Idaho 438, 206 P. 1054, the capital stock of the bank was assessed at 100% of full cash value, while all other property in the county was assessed at 50% of its full cash value. We held the requirement that all property be assessed at its actual cash value is secondary to the constitutional mandate of equality of taxation and accordingly the taxpayer's assessment was reduced to 50% of its full cash value.

In Anderson's Red & White Store v. Kootenai County (1950), 70 Idaho 260, 265, 215 P.2d 815, 818, 165 merchants of Kootenai county complained that the assessor fixed a value upon their stocks and merchandise at 20% of actual cash value and assessed all other property in the county on the basis of 10% of its actual cash value. We there said:

" * * * after having considered all of the relevant factors affecting the value of the different classes and items of property, and having arrived at the current value, if the result is not entered as the assessed value, and the assessor decides that the 'full cash value' contemplated by statute is less than the value so arrived at, he must assess all property at the same proportion of its market or other actual current value * * *. Without explanation the assessments were fixed at 20% of this value, while according to the testimony of those who qualified as experts other property was assessed at 10% of current market values. If this disparity is not reasonably justified,

then the constitutional requirement of uniformity has been violated."

In Chastain's Inc. v. State Tax Commission (1952), 72 Idaho 344, 241 P.2d 167, the taxpayer, accompanied by more than 100 other owners of merchandise, machinery, furniture and fixtures, objected to the assessing of such property at 30% of its full cash value, when other property in the county was assessed at 23% of its full cash value. We concluded this assessment violated the provisions of art. 7, §§ 2 and 5, of our constitution, requiring uniformity of taxation.

In In re Farmer's Appeal (1958), 80 Idaho 72, 78, 325 P.2d 278, 280, we concluded:

"In order to obtain uniformity for ad valorem taxation the same basis of valuation should be used. Where property is assessed for taxation purposes at a percentage of its full cash value as of the date of the assessment, all property should be placed in the same category and taxed on the same basis of value."

Findings of the assessor as to market value are presumed correct, and "the burden of proof is upon the taxpayer to show by clear and convincing evidence that he is entitled to the relief claimed." In re Appeal of Sears, Roebuck & Co., supra.

When a prima facie case of discrimination is established, the assessor must then produce evidence to support his assessment. Anderson's Red & White Store v. Kootenai County, supra.

In assessing property an assessor should consider earning power and all other factors known or available to his knowledge which affect market value. Anderson's Red & White Store v. Kootenai County, supra.

"We have said in Appeal of Sears, Roebuck & Co., 74 Idaho 39, 256 P.2d 526, that we will not correct mere mistakes or errors of judgment on the part of an assessor, but will grant relief where the valuation fixed by the assessor is manifestly excessive, fraudulent or oppressive; or arbitrary, capricious and erroneous resulting in discrimination against the taxpayer." C. C. Anderson Stores Co. v. State Tax Com'n, 86 Idaho 249, 384 P.2d 677, at 679–680.

"The question is not what someone else, however eminent he may be in the field of appraisal work and knowledge of market values, may think is the proper method, but involves simply the determination as to whether the method used by the assessor was legitimate and fair, and was a reasonable method to use in arriving at the value of the property in question." Eastern-Columbia v. Los Angeles County, 61 Cal. App.2d 734, 143 P.2d 992, at 998.

**162**

Plaintiffs further contend the court below erred in not finding that the ratio of assessed value to current market value in Ada county had been determined by the state tax commission's survey of September 3, 1958. This publication is entitled, "A Report of the 1958 Ratio Study of Real Property by State Tax Commission."

The defendant claims the evidence in this study is not competent because "it is clear throughout this report that 'full cash value' was determined by examining all or a part of the documents of transfers of real property of the several counties, extracting the consideration shown, or the revenue stamps affixed to such documents." In the case of Washington County v. First Nat'l Bank, supra, this court held that a statement of consideration recited in a deed cannot be relied upon as proof of the actual value of property.

■ From the report of the state tax commission, we note that although the primary indicator of value was obtained from deed records filed in the office of the county recorder, this data was not accepted as the sole index of market value. Real estate brokers and abstracters were contacted to determine whether considerations recited in the deeds were generally reliable. A check was also made to determine whether over-stamping was common. County assessors and other county officials were consulted on sale values. Bankers and savings and loan officials and city officials were contacted for their verification of market value or market trends. Further, it should be noted this report was compiled pursuant to the official duties of the state tax commission. Its findings are competent.

· Defendant further contends, however, the report is incompetent because not all deeds recorded were examined. The state tax commission concedes:

"In the heavily populated counties where deed recordings far exceeded the time and personnel available for recording all sales, a random sampling technique was devised whereby a maximum of 500 sales was used in the county ratio. The procedure here was to take 20 transactions from each of the 24 months and then to supplement with additional sales from certain classes."

However, in Washington County v. First Nat'l Bank, supra, 35 Idaho at 447, 206 P. at 1057, we held that it was not necessary for the taxpayer to produce direct evidence of the value of *all* taxable property:

" 'Deductions may safely and confidently be drawn from a reasonable number of typical and representative cases all pointing to the same end.' "

■ Moreover, the data compiled in a report of the state tax commission is not conclusive. The courts may consider other sources of relevant and competent evidence.

We note from the assessor's testimony that he did not use or consider earning power in the assessment of plaintiffs' property, because plaintiffs did not comply with his request for information as to earnings of their respective properties. Idaho Code § 63–209 authorizes an assessor to demand such information and provides that if the information is not given, "the assessor may list and assess such property according to his best judgment and information."

The judgments are reversed and the causes are remanded to the district court with directions to make findings of fact as to the market value of plaintiffs' properties and to find what percentage or ratio of market value property within Ada county was generally assessed for the year 1958. If it is found that plaintiffs' properties were overvalued, compared to other property within the county, then the court shall reduce plaintiffs' assessments by such amounts as will equalize them with the assessments on all other property, or as nearly so as the evidence will permit. The court may open the cases for further proof. Anderson's Red & White Store v. Kootenai County, supra.

No costs allowed.

KNUDSON, C. J., McQUADE and McFADDEN, JJ., and ASCHENBRENER, D. J., concur.